OTHO W. EICHELBERGER and JAMES P. ERSKINE, *vs.* WILLIAM F. MURDOCK and ALEXANDER MURDOCK.

Where a consignee receives goods or money with instructions to deliver or pay them to a third party, such party cannot maintain either trover or an action for money had and received, *until* the consignee *does some act* by which he binds himself to such third party; without such act there is no privity of contract between him and the third party, and the title still remains in the consignor.

A letter, directing a bank to which the writer had pledged certain stock as collateral security for a *specific* debt, "to hold the stock as a *general collateral security for all* the writer's *liabilities* to the said bank, at present existing or which may *hereafter* be incurred by him," authorises the bank to apply the surplus of the stock, after payment of the specific debt, *pro rata*, to *all* such liabilities.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* brought by the appellees against the appellants, to recover the amount of certain drafts and a promissory note, drawn and made by Lake & Co., and endorsed by the defendants, dated respectively the 5th of December 1842, and the 6th of February 1843, and assigned by the Union Bank to the plaintiffs. Plea *non assumpsit.*

*Exception.* The facts of the case are fully stated in the opinion of this court. The plaintiffs asked two instructions, the first of which the court, (FRICK, J.,) rejected, but granted the second. The defendants also offered two prayers, which

the court rejected. The plaintiffs' first prayer, asserts their right to recover the *whole amount* of the drafts and notes, sued on, with interest from maturity, *provided*, the jury find they were drawn by Lake & Co., endorsed by the defendants, and duly protested, and that the Union Bank, on the 23rd of August 1843, transferred them to the plaintiffs for value, and paid to the plaintiffs $2243, the balance of the proceeds of the stock mentioned in the evidence, and that this stock was sold by the authority of Lake & Co., and the surplus so paid over, under the letter of Lake & Co., to the cashier of said bank, of the 14th of June 1843, and that the several papers offered in evidence were executed by Lake & Co., and that when the drafts and note were so transferred, and said surplus so paid to the plaintiffs, the bank then held liabilities of the plaintiffs, for the accommodation of Lake & Co., upon which Lake & Co., were liable to the bank, and also other liabilities of Lake & Co. The other prayers are sufficiently stated in the opinion of this court. Both parties excepted to the ruling of the court below and appealed, but the plaintiffs dismissed their appeal, after the argument of the case in this court was concluded.

The cause was argued before LE GRAND, C. J., ECCLESTON, and TUCK, J.

*T. Yates Walsh* and *John Nelson* for the appellants, argued:

That the ruling of the court below, in granting the prayer of the appellees and rejecting those of the appellants, was erroneous, because by the terms of the authority derived from Lake & Co., the Union Bank was bound to apply the surplus paid over to the appellees, to the notes and bills of exchange of Lake & Co., upon which the appellants were endorsers and acceptors, and that the arrangement made between the bank and the appellees with a view to avoid such application, was a fraud upon the rights of the appellants. The instructions by Lake & Co., directed the surplus to be paid to *any paper of theirs*, which the bank should *deem itself insecure in*. The proof shows that the paper of Lake & Co., endorsed by

the defendants, *was insecure,* and that the bank so *deemed it.* What right then had the bank to go out of the terms of the instructions applying the surplus proceeds of this sale, and pay it over to the plaintiffs? The plaintiffs had no interest whatever, as holders or endorsers of the paper of Lake & Co., *endorsed by the defendants.* One of the plaintiffs was a director in the bank, knew of the arrangement between it and Lake & Co., in regard to this application, and their effort to appropriate these funds in a mode different from that specified in that arrangement, is in fraud of the defendants. 1 *Md. Rep.,* 85, 86, *Bayne vs. Suit.*

*Reverdy Johnson* and *Reverdy Johnson, Jr.,* for the appellees, argued:

1st. That the court erred in rejecting the *first* prayer of the plaintiffs, because having paid the bank full value for the note and acceptances sued upon, the plaintiffs were entitled to recover their full amount with interest, although they received from the bank the $2243, surplus sales of stock, as the bank was not prohibited negotiating these securities for value, nor was it prohibited securing itself as to these, or any other of Lake & Co's liabilities, by other means than by the pledged stock. 14 *East,* 582, *Williams vs. Everett.* 3 *Price,* 58, *Grant vs. Austen.* 1 *Mees. & Wels.,* 365, *Brind vs. Hampshire.* 5 *Pet.,* 580, *Tiernan vs. Jackson.*

2nd. That the court, if it did not err in rejecting the plaintiffs' first prayer, was not in error in granting the second, nor in rejecting those of the defendants, because the most favorable construction of the letter of Lake & Co., of the 14th of June, to which the defendants are entitled, is that the surplus proceeds of stock was to be divided, *pro rata,* among all Lake & Co's liabilities to the bank, in which the bank deemed itself insecure, (which must have been the case with most, Lake & Co. having then failed,) and not that the surplus should be applied exclusively for the defendants' benefit; the bank could therefore have recovered of the defendants, any balance on the note and acceptances now in suit, after deduction of a proportionable dividend of the surplus, and its assignees for value,

the plaintiffs, are equally entitled to recover to that extent. The stock was originally pledged to secure the specific loan of $8100, and nothing more. The object of the paper of February 1843, was to let the bank hold on to the excess of this stock, over the $8100, for any paper on which Lake & Co. were *then*, or *might thereafter*, be liable to the bank. The paper of June 1843 was not necessary to enable the bank to *apply* the stock; it had this already by the previous paper. This latter paper was given for a *different purpose*. It was not designed to give the *bank* any security, but to give the *plaintiffs* the security, after payment of any debts the bank deemed insecure. It does not change the right of the bank to apply the surplus to any debts it deemed *insecure*, and the acceptance of this paper is *no promise* on the part of the bank, to apply the surplus to any such debts. It simply says, apply the surplus as you had a right to do under the paper of February 1843, and then the balance to the Murdocks The *insecurity* is a matter to be judged of by the bank, at the moment the *stock was sold*.

Le Grand, C. J., delivered the opinion of this court.

This was an action brought by the appellees against the appellants, to recover the amount of certain drafts, and a promissory note, drawn and made by Lake & Co., of New Orleans, and by the appellants endorsed. The drafts and notes were discounted at the Union Bank of Baltimore, for the accommodation of Lake & Co. There is no question of sufficiency of demand and notice, nor of the genuineness of the paper. The dispute arises out of a state of facts which may be thus indicated: It appears from the record, that on the 13th day of February 1843, the Union Bank of Maryland, as collateral security for the payment of a specific liability of Lake & Co., held one hundred and fifty shares of the stock of the Farmers and Merchants Bank of Memphis, Tennessee; and on that day received from Lake & Co., the following letter:

"Baltimore, February 1843.—The President and Directors of the Union Bank of Maryland, are hereby authorized to hold the one hundred and fifty shares of the stock of the Farmers

and Merchants Bank of Memphis, now standing in their name as a general collateral security for all our liability to the said bank at present existing or which may hereafter be incurred by us.                                              LAKE & Co."

On the 14th day of June, the bank received the following note:

"Baltimore, June 14th, 1843.—In conformity with the original understanding between Messrs. W. F. & A. Murdock and ourselves, in regard to their paper discounted for our use, by, and now held by your bank, we beg to inform you that any surplus arising either from sale or otherwise of the F. & M. Bank, of Memphis stock, now held by your bank, and for any other paper of ours your bank deems itself insecure in, is to go towards the liquidation, with your bank of any of our said paper drawn or endorsed by W. F. & A. Murdock.           With great respect, &c.        LAKE & Co."

On the 8th day of September 1843, Lake & Co. authorized the bank to sell the stock which had been hypothecated, and which was accordingly done on the 9th of the same month, realizing therefor $69.50 per share, making in the aggregate $10,425. In notifying Lake & Co. of the sale, Mr. Mickle, the cashier of the Union Bank of Baltimore, after stating the amount of sale, says, leaving "a surplus according to the statement of account herewith submitted, of $2243.44, which surplus has been paid over to Messrs. W. F. & A. Murdock, under your letter to the bank of the 14th of June last." On the same day the amount ($2243.44) was paid to the Messrs. Murdock, and receipted for by them. In the receipt given by them is the following:—"We hereby, in consideration of the receipt of the above mentioned sum of money, guaranteeing the said Union Bank of Maryland from all loss or damage they may sustain by reason of the said payment." After these facts were given in evidence, it was proven, that the bill of exchange, promissory note and draft, to recover the amount of which this suit was brought, were assigned on the 26th day of August 1843, to the appellees, the bank receiving therefor from them the full amount thereof. It was shown by the receipt of Lake & Co., dated the 15th day of April 1841, that

48      v.10

the appellees' notes in their favor, or endorsements of Lake & Co's own paper of various dates and sums, in the aggregate amounted to nearly $22,000; all of which notes and endorsements were granted for Lake & Co's sole use and accommodation; and proved that the notes, or the renewals of such as were stated in the receipt as being in the hands of the Union Bank of Baltimore, continued to be so held at the time of the sale of the Memphis bank stock. The appellants then proved, that they had stopped payment sometime prior to the sale of the stock; and also, that prior to, and up to the time of the trial, one of the appellees was a director of the Union Bank, and knew and approved of every step taken by the bank in regard to the liabilities of Lake & Co., and especially of the arrangement of the 14th of June 1843, and the sale of the 9th of September following.

On this state of case, the appellants submitted two prayers to the court, both of which were rejected; the appellees, also, offered two prayers, the first of which was rejected, and the second granted. Both parties appealed; but inasmuch as the appeal of the appellees in this case has since been dismissed, it is not necessary we should review the action of the court below in regard to the first prayer of the appellees.

The theory of the prayer, granted by the court on behalf of the appellees, is, that if the jury should believe the facts, which we have cited from the record, then the appellees were entitled to recover the amount of the note and acceptances sued on with interest, less the proportion to which the same would be entitled, of the sum of $2243, proceeds of the sale of the Memphis Bank stock, having regard to the entire debt due the bank by Lake & Co. at the time when such surplus was paid by the Union Bank to the appellees, and the note and acceptances transferred to the latter.

The first prayer of the appellants is based upon the ground, that if the jury should believe that when the bank received the instructions of Lake & Co., of June 1843, Erskine and Eichelberger's liabilities to the bank were insecure, and in concert with the appellees, adopted the arrangement of the 26th of August 1843, as a means whereby the said bank should be

saved harmless in regard to said liabilities, and that Erskine and Eichelberger received no advantage from the sale of the Memphis bank stock, then, there could be no recovery in this action. The second prayer of the appellants declares, that if the jury should find from all the evidence, that the arrangement of August 1843, between the appellees and the Union Bank of Baltimore, was adopted to avoid and evade the contract of the 13th day of 'February 1843, and that of June of the same year, then such arrangement was tortious and wrong, and conferred no title on the appellees to the note and acceptances sued upon.

The ruling of the court in regard to the first prayer of the appellees, the appeal from it having been dismissed, is not now before us; but if it were we would have no hesitation in saying it was erroneous. The cases cited at the bar are explicit and direct to the point contained in that prayer. They clearly establish this principle, that where a consignee, or remittee, receives goods, or money, with instructions to hand them or pay it over to a third party, such third party cannot maintain either *trover*, or an action for money had and received, until the consignee or remittee does some act by which he binds himself to such third party; without such act, there is no privity of contract between him and the third party, the title still remaining in the consignor or remittor. The cases we refer to on this point are the following: *Williams vs. Everett*, 14 *East.*, 582. *Grant vs. Austen*, 3 *Price*, *(Excheq. Rep.,)* 58. *Brind vs. Hampshire*, 1 *Meeson & Welsby*, 365. *Tiernam vs. Jackson*, 5 *Peters*, 580.

It is impossible for us to perceive any wellfounded objection to the instruction which the court did give. If the appellants have any ground whatever of defence it is derived from the letters of Lake & Co. to the Union Bank of Baltimore, of dates 13th of February 1843 and June 14th of the same year. The Memphis Bank stock was pledged specifically for an obligation of Lake & Co's for $8100. The letters of February and June, can bear no other construction than that, after that debt was paid, the surplus should be applied to other liabilities of Lake & Co. The appellants cannot contend

that it was to be applied *exclusively* to their liabilities. The letter of June clearly confines the application of the surplus to any paper *"drawn or endorsed by W. F. and A. Murdock."* But it was said at the bar this note ought to be construed in connection with the one of February. If this be done the appellants have no right to complain of the court's instruction. What does that note say? It does not appropriate the stock as a security, *exclusively*, for the liabilities of Erskine and Eichelberger; on the contrary, it appropriates it "as a *general collateral security for all our liability*" to the bank, "at *present* existing, or which may be *hereafter* incurred." The instruction of the court is in strict conformity with this direction; it allowed the appellants an abatement in the proportion which their indebtedness to the bank stood to the fund to be applied, and the whole amount of liability of Lake & Co.

The first prayer of the appellants, which the court rejected, only denied the right of the plaintiffs to recover, provided the jury found they did not derive *"any advantage"* from the arrangements made between the Union Bank and Lake & Co. The instruction given by the court did allow them as great an advantage as that given to any other person or persons who had become liable to the bank for Lake & Co; and they realized this advantage in the verdict of the jury. It follows necessarily, if these views be correct, the prayers on behalf of the appellants were properly rejected. We affirm the judgment.

*Judgment affirmed.*

Tuck, J., dissented.