# Wheeling.

## THE FIRST NATIONAL BANK OF WELLSBURG
## v. KIMBERLANDS.

Decided April 24, 1880.

1. If the jury be sworn to try the issue, and several issues have been joined, and the verdict of the jury is responsive to them all, the Appellate Court will disregard such irregularity and will consider all the issues as decided by the verdict.

2. If a plea concludes to the country, as *non assumpsit* or payment, the plaintiff may without the formal addition of the *similiter* proceed to trial, as though the issue had been formally joined. But if the plea concludes with a verification, the plaintiff must reply thereto, before the case can be tried by the jury.

3. Accord and satisfaction may be given in evidence under the plea of *non assumpsit*.

4. The inherent powers of a president of a bank by virtue of his office are very limited, and it is difficult to say what powers he inherently possesses, if any other than the power to take charge of the litigation of the bank by employing counsel and otherwise.

5. A president of a bank may be authorized by its directors to do any act, which they are authorized by their charter to do, unless the act to be done can by the charter be done only by the directors themselves.

6. Such authority need not be proven by showing that it was expressly conferred by the board of directors, but may be proven by showing the existence of such facts, as constitute clearly a public holding out that the particular act done or contract entered into was within the scope of his legitimate delegated authority.

7. The inference, that such authority has been impliedly conferred, may be legitimately drawn by proving that he was in the habit of doing acts or making contracts of the same general character as the

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

particular act or contracts which he has done or made, and that these acts or contracts, which he was in the habit of doing, though applied to different subjects, involved the same general power, except when the acts and contracts, which he was in the habit of doing or making, were so very numerous and so variant in their character as clearly to justify the inference, that he was authorized impliedly to do all acts and make all contracts, which the directors had the power to do or to make, and to confer on the president the right to do or to make.

8. The directors of a bank may ratify any act done or contract made by the president without authority, which they could have authorized him to do or to make.

9. The acceptance of the benefits of a contract made by the president for the bank is an implied ratification of such contract, and if money is received by its cashier for the bank under such contract, even when such receipt was unknown to the directors, it will be a confirmation of the contract, unless the money so received is returned, when its receipt becomes known to the directors.

10. An order drawn on a particular fund or debt, and for the whole thereof, though not accepted by the drawer, is a good equitable assignment of the fund or debt, and it will be recognized by a court of law to the extent of permitting the payee of such an order to institute a suit at law in the name of the drawer against the drawee.

11. If such an order is drawn on a particular fund or debt for but a part of such fund or debt, though not accepted, the order will be an equitable assignment of the fund or debt *pro tanto*, and may be enforced in a court of equity; but a court of law will not recognize such equitable assignment *pro tanto* by permitting the payer to bring suit at law in the name of the drawer against the drawee.

12. Though such order on its face does not specify clearly what fund or debt it is drawn upon, yet surrounding circumstances and parol evidence may be introduced to show, that it was drawn on a particular fund or debt, and that it was intended to be an assignment of the same.

13. The particular fund or debt, on which such draft is made, must have an actual or a potential existence, or the draft will be inoperative. But to make such draft valid as an equitable assignment, it is only necessary for the particular fund or debt to have a potential existence.

14. A mere possibility or expectancy can not be assigned either at law or in equity, and therefore, if, when such an order is given, there be neither an actual debt nor any contract, engagement or arrangement between the drawer and the drawee out of which a debt

could arise, such a draft could not operate as an equitable transfer of any subsequent debt.

15. If the order was given or intended to operate on a fund or debt, which would be due on the completion of a purchase of a foundry property, consisting of real and personal property, and if before the order was given a contract had been made to purchase this foundry property, and to pay for the personalty at a certain fixed price, and to pay for the realty such price as might be agreed between the parties, but the price to be paid for the real property had not, when the order was given, been fixed, yet this order would operate as an equitable transfer *pro tanto* of the proceeds of the sale of such foundry, including the real estate, as it had, when the order was given, a potential though not an actual existence.

16. Such an order on a particular fund having, when the order is given, a potential existence, if agreed to be received and actually received in satisfaction and discharge of a debt, is a good accord and satisfaction.

17. If such an order was received as collateral security for a debt, it would be the duty of the payee to use reasonable care and diligence to make it available; and if by negligence, wrongful act or omission on his part loss was sustained on this order, such loss should be borne by the payee.

18. The court on motion of the plaintiff ought to refuse to permit any plea to be filed, which on its face is fatally defective on a general demurrer.

19. The plaintiff in such case, to have advantage of an error of the court in permitting such a plea to be filed, need not take a bill of exceptions; it is sufficient that on the record-book it appears that he objected to the filing of the plea; and it will be presumed that his objection was grounded on the insufficiency of the plea in law as a defence, if the record does not disclose some other ground of objection as the one which was relied on.

20. This court will presume that the plaintiff is injured by the court's permitting an improper plea to be filed after objection is made to it, unless it affirmatively appears by the record that no injury could have been sustained by the plaintiff, which can not appear, if the record as presented to the Appellate Court fails to state the evidence or facts on which the verdict of the jury was based, and this court does not see that all the evidence heard by the jury could have been admitted under proper pleas in the case; and even if all such evidence was certified by the court below, and was admissible under other pleas, it might not necessarily follow, that the plaintiff would not be injured by the improper filing of such plea.

1880
Special Term.

The First Na-
tional Bank of
•Wellsburg
v.
Kimberlands.

21. The court below ought to have rejected the special plea filed in this case, because it was fatally defective on general demurrer. For the plea, see *infra* page 559 .

22. If a case is tried by a jury on issues joined, and a plea of set-off, not in writing, has been entered on the record as filed, in which there does not appear to be any replication, and no bill of particulars was filed with the plea of set-off at any time before the trial, the failure to make up the issue on the plea of set-off would be no ground for setting aside the verdict, as no evidence could have been offered on such plea in the absence of a bill of particulars.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Brooke, rendered on the 25th day of September, 1873, in an action at law in said court then pending, in which The First National Bank of Wellsburg was plaintiff, and Campbell Kimberland and Henry Kimberland were defendants, allowed upon the petition of said bank.

Hon. T. Melvin, judge of the first judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

· This is an action of *assumpsit* instituted in the circuit court of Brooke county by The First National Bank of Wellsburg on two negotiable notes executed by Campbell Kimberland to Henry Kimberland, Sr., each for one thousand dollars, payable four months after their respective dates, and dated, one June 14, 1870, and the other June 21, 1870, both of which were protested, and also for the costs of the protest $1.95 each. The declaration was in the usual form and was demurred to, but the court did not act on the demurrer. At rules the defendant filed pleas of *non assumpsit,* payment and set-off, but no bill of particulars was filed. No replication was ever filed to any of these pleas, and no issue joined on any of them. In the court the defendants asked leave to file a special plea, to which the plaintiff objected, but the court overruled the objection, and the plea was filed. It is as follows :

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

" The defendants, for further plea in this behalf, say the plaintiff ought not to have or maintain his said action against them, because they say that heretofore, on the 20th day of August, 1870, after said notes were made, the maker of said notes and said plaintiff had an agreement at the special instance and request of the said plaintiff, whereby said defendant, C. Kimberland, executed and delivered to, and said plaintiff accepted an order on The Wellsburg Manufacturing Company for $5,000.00, out of which said notes in said declaration mentioned were to be paid, which said order was accepted by said Wellsburg Manufacturing Company, and then and there delivered to said plaintiff and accepted by it in full satisfaction and discharge of the debt in the declaration mentioned; and this he is ready to verify."

To this plea the plaintiff replied generally, and issue was joined. On the first trial of this issue the jury failed to agree and were discharged; and on the second trial they found a verdict for the defendants, and the plaintiff moved for a new trial. The court overruled the motion, and on March 17, 1874, entered up a judgment for costs for the defendants. During the last trial a motion was made to exclude certain evidence by the plaintiff, and after the case was submitted to the jury the plaintiff asked certain instructions, which were all refused except one, which was modified by the court before it was granted; and the defendants asked certain instructions, which the court granted; and the plaintiff took an exception to these various rulings of the court.

A writ of error and *supersedeas* has been awarded to the judgment of the circuit court on the petition of the plaintiff.

The bill of exceptions sets forth all that occurred during the trial, from which it appears from the defendants' evidence, that the plaintiff a corporation, organized under the national banking act, on August 20, 1870, held six negotiable notes of $1,000.00 each executed by one of the defendants, Campbell Kimberland, none of which

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

had matured. One of these notes was endorsed by one Harding; three of them by S. George; and the other two were the notes sued on, endorsed by Henry Kimberland, Sr. The president of the First National Bank of Wellsburg, the plaintiff to whom said six notes were due, was one Adam Kuhn; and he and Campbell Kimberland, the drawer of these six negotiable notes, had been partners in the foundry business in Wellsburg, and as such owned property real and personal. Campbell Kimberland, the maker of these negotiable notes, was the active member of said firm of Kimberland & Kuhn. On the real estate owned by the said firm there was a lien for the purchase-money thereof for $1,000.00 in favor of S. George, executor. This firm on August 16, 1870, agreed that they would sell to the Wellsburg Manufacturing Company, of which Kuhn was president, this foundry property of Kimberland & Kuhn, the personal property to be paid for at its appraised value, which was $5,100.00; but the price to be paid for the real estate was not then fixed, but after some delay produced by the parties differing in opinion as to its value it was finally fixed by the parties Kimberland & Kuhn, the vendors, and The Wellsburg Manufacturing Company, the vendee, at $1,800.00, to be paid in thirty days. This agreement as to the price to be paid for the real estate was not concluded until two P. M. of August 20, 1870. But in the forenoon of the same day in anticipation of this sale Campbell Kimberland proposed to pay his five notes of $1,000.00 each due to the plaintiff, The First National Bank of Wellsburg, by giving an order on The Wellsburg Manufacturing Company for $5,000.00, after first giving S. George, executor, an order for $1,000.00, the balance due on the property. This proposal was made with the concurrence of his partner, Kuhn, and was made to the president of The First National Bank of Wellsburg, the plaintiff. The president of this bank was Adam Kuhn aforesaid, the partner of the drawer of these notes, Campbell Kimberland, and he was also the president of

The Wellsburg Manufacturing Company. The business of the plaintiff, The First National Bank of Wellsburg, was mostly done by its president, Adam Kuhn, and its cashier, the board of directors of the bank meeting but seldom.

When this proposition of Kimberland and Kuhn, made by Kimberland, one of the defendants, to the president of the First National Bank of Wellsburg, the plaintiff, through its president, Adam Kuhn, to give this order for $5,000.00 on The Wellsburg Manufacturing Company, to pay Kimberland's entire indebtedness to the bank, was made in the forenoon of August 20, 1870, to Kuhn, its president, he refused to take this $5,000.00 order offered, unless Kimberland would first give him an order for $1,150.00 on The Wellsburg Manufacturing Company to pay an individual indebtedness of Kimberland to him of $650.00, which he claimed, and also an order in favor of one Prather, whom Kimberland owed, and for which debt Kuhn was his security. About noon of August 20, 1870, Kimberland agreed with Kuhn after calling in S. George, executor, that an order should be given by him, Kimberland, on The Wellsburg Manufacturing Company for $1,000.00 in favor of S. George, executor, he having a lien on the real estate sold to this company by Kimberland and Kuhn, and also these two orders which were drawn by Kuhn and signed by C. Kimberland, as follows:

"20TH AUGUST, '70.

"WELLSBURG MANUFACTURING COMPANY:

"If you buy my foundry you will pay John Prather $500.00, with interest from 1st April, 1870, and to A. Kuhn $650.00, with interest.

"C. KIMBERLAND."

There was no endorsement of any kind on this order.

"WELLSBURG MAN'F'G CO.:

"After paying my orders in favor of John Prather,

Adam Kuhn and S. George, ex'r, you will pay First National Bank of Wellsburg, on my debt, $5,000.00.

"C. KIMBERLAND.

20TH AUGUST, '70."

Endorsed on the back of the last order was the following:

"August 24, 1870.—Cr. to Campbell Kimberland's acct. $1,193.03.

"S. JACOB, *Cr.*"

The S. Jacob, who endorsed on the back of this order the credit on it of $1,193.03 four days after it was given, was the cashier of the First National Bank of Wellsburg, the plaintiff in this action.

The defendants further gave evidence tending to prove that the last order above was given to and received by said Adam Kuhn, as president of the plaintiff, and who represented at the time that he had power and authority as such to receive the same, and that nothing could get ahead of it. The defendant then proposed to give verbal evidence by a witness that at the time said orders were given to said Kuhn, it was directed by said Campbell Kimberland and agreed upon between said Kimberland and said Kuhn, as such president of plaintiff, that said $5,000.00 was to be applied to that part of the indebtedness of said Kimberland to the plaintiff, which was evidenced and secured by the two notes sued on in this case, the $1,000.00 note upon which Harding was surety, and certain two of the three notes for $1,000.00 each upon which Samuel George was surety, to which proposed verbal evidence the plaintiff objected, but its objection was overruled by the court, and the evidence was permitted by the court and given by the witness, to which ruling of the court the plaintiff then excepted. The verbal evidence thus given by the defendants tended to prove that at the time said $5,000.00 order was given, the said Kimberland directed, and such was the agreement between said Kimberland and Kuhn, as president of plaintiff, that it was to pay said five $1,000.00 notes

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

so particularly designated, and that the same was so agreed to be and was taken in full payment and satisfaction of the said particularly designated notes; that when the plaintiff took said $5,000.00 order, S. George and C. Kimberland demanded the five notes of $1,000.00 each aforesaid, including the two notes sued on in this cause, from said plaintiff, but that the plaintiff retained them for the purpose of making computation of the interest to be refunded to C. Kimberland, since the notes had been paid before maturity—the interest on said notes having been paid in advance, and promised after said computation was made to return said notes to C. Kimberland.

The defendants further gave evidence tending to prove that said $5,000.00 order was never returned to said Campbell Kimberland, neither were any of the five $1,000.00 notes for which defendants claimed it was given; that the plaintiff at the maturity of the respective notes had demanded payment thereof, and they were protested for non-payment; that the orders were given with the expectation of selling the real estate (and after the sale of the personalty) to The Wellsburg Manufacturing Company; that the said Kimberland never received any of the purchase-money of said foundry property from said Manufacturing Company, except the $1,000.00 which was paid to S. George, executor, upon the order given him; that he gave no other orders upon said company than the three before mentioned; that the $1,000.00 order to S. George, executor, was paid by The Manufacturing Company to him one or two months after it was given; that said Kimberland, a few days after said orders were given, to wit, on the 23d of August, 1870, made a general assignment of all his property and effects to Samuel George in trust for the benefit of his creditors, by deed duly recorded in Deed Book 21, p. 447, in the then recorder's office of Brooke county; that The Wellsburg Manufacturing Company is now insolvent and made an assignment to S. Jacob of all its property, real and personal, including all its rights and franchises, by

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

deed dated November 1, 1870, and duly recorded in said county, to secure the payment $20,000.00 of convertible bonds, being money borrowed from sundry persons (as it is expressed in said deed), payable one year after date, with nine per cent. interest—a part of the property so assigned being all the property said Wellsburg Manufacturing Company purchased of said C. Kimberland, and that said company has ever since said assignment been insolvent.

The plaintiff, to sustain the issue upon its part, by way of rebutting testimony gave evidence contradictory to the parol evidence given by defendants, and tending to prove that there was *no* agreement between the said Campbell Kimberland and the said Adam Kuhn, as president of the plaintiff or otherwise; that the $5,000.00 order was to be taken in payment or satisfaction of the five particular $1,000.00 notes as claimed by defendants, either in whole or in part, or that the said order was to be applied towards the payment of those particular notes, or of any specified indebtedness other than was shown upon the face of the order, and that the sale of the personal property was not complete until two o'clock in the afternoon of August 20, 1870, at which time the price of the land was agreed upon and the sale of the land consummated. It also gave evidence tending to prove as follows: that at the time said order was given the said Campbell Kimberland was further indebted to the plaintiff for over checks upon his running deposit account to the amount of $1,193.03, which was then due to the plaintiff, and for which plaintiff had no security, and in the further sum of $750.00 upon a note given by him and one A. Buchanan; that at the time said order was given for $5,000.00 no direction or request was made by said C. Kimberland as to the application of the order or its proceeds other than is shown upon its face; that said order was given simply as collateral security upon the indebtedness of the drawer to the plaintiff; that it was taken at the request of drawer and handed

to plaintiff's cashier by said Kuhn, its president, who represented to the cashier that he had taken it as such collateral security in the manner hereinafter stated; that the cashier laid it away in a drawer; that no credit was given for the order, either upon the books of the bank, or otherwise; that the plaintiff's bank had never accepted the order in any form or manner, either as payment or otherwise, but that it was taken by said Kuhn solely with the understanding that The Wellsburg Manufacturing Company would make its payments for the purchase of the foundry property through the plaintiff's bank, and that when payments were made, said Kuhn would see that the money was properly applied upon the order, and this at the request of both C. Kimberland and S. George, who are brothers-in-law; that no payment had ever been made upon that $5,000.00 order, except the sum of $1,193.03, which was made by the bank charging up that amount upon its books, as against The Wellsburg Manufacturing Company, and crediting the same amount to the deposit account of C. Kimberland, which squared said account, and also crediting the same amount upon the $5,000.00 order, which was done on the 24th of August, 1870.

The Wellsburg Manufacturing Company did not have at that time quite as much money in the bank as was then credited to Kimberland and upon the order, and the bank had no check for it. The credit and charge were made by the cashier with the advice and consent of said Kuhn, and was known to said manufacturing company, which made no objection. The books of the bank were generally kept by Kuhn, who did the posting, &c. He did this, and also sometimes acted as assistant cashier by way of accommodation, but he was never appointed by the board to any other position than as president of the bank; that there was no formal presentation of the order by the plaintiff to the board of directors of The Wellsburg Manufacturing Company until the 10th of January, 1871, but its directors and officers had a

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.
knowledge of the existence of the order in the bank. A few days after it was given the manufacturing company became dissatified with the inventory and appraisement of the personal property, and claimed that C. Kimberland had made false statements in regard to the number of flasks which were inventoried and appraised in bulk upon the faith of his representation, and upon a recount were found to be less in number, and they determined they would not make payment until the number of flasks for which they were to pay was adjusted with Kimberland, which determination was made known to Kimberland and his assignee, Jacob, and the plaintiff. That said Kimberland was a stockholder in the manufacturing company, having subscribed for $2,000.00 of its stock, which was unpaid and has never since been paid, and was its debtor for that amount; that Kuhn, as president of the manufacturing company, had no authority to accept the $5,000.00 order, but that on the contrary its acceptance or rejection had been the subject of discussion in the board of directors from the time it was given, the directors opposing its acceptance and insisting that the $2,000.00 due upon Kimberland's subscription, and a proper allowance for the deficiency in the number of flasks, should be adjusted and taken out of the amount of purchase-money, and on the 10th day of January, 1871, when the order was formally presented to the board, they entered a formal vote upon their minutes that said $5,000.00 would not be accepted or paid.

The plaintiff gave further evidence tending to prove that C. Kimberland, the drawer of said order, with the advice and consent of George, his assignee, subsequently, to wit, on the — day of September, 1870, by a written instrument, countermanded the payment of the double order for $1,150.00 first above copied, before the same was paid or accepted by The Manufacturing Company, and that said countermanded order was never afterwards accepted or paid; that plaintiff is a corporation organized and doing business under the national banking act; that

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

The Manufacturing Company notified Samuel George, trustee, a day or two after the assignment to him in trust for the benefit of said Kimberland's creditors, that they would not pay for those flasks which had been appraised to them at $2,000.00, as there was but little over half the number represented by Kimberland and thus appraised, and that Mr. George said there should be a reduction made; that the deficit in the number of flasks amounted in value to from $500.00 to $800.00, and that no settlement has ever been made between The Wellsburg Manufacturing Company and C. Kimberland or his assignee.

And the defendants in further support of their side of the issue, gave evidence contradictory to the rebutting evidence of plaintiff, tending to prove as follows: That the defendant, C. Kimberland, was not indebted to the plaintiff for over-drafts of his running deposit account in the sum of $1,193.03, nor in the further sum of $750.00 on a note made by him and one Buchanan; that C. Kimberland did not make false statements in regard to the number of flasks in the inventory, and that they were not appraised on his (Kimberland's) representations, and that the number of flasks were not less than represented by C. Kimberland, and that C. Kimberland had no knowledge of The Manufacturing Company's intention not to pay the same until the matter was adjusted; that C. Kimberland was not a stockholder of or subscriber to the stock of said company, and was not indebted to it; that said company did not notify S. George, trustee of said C. Kimberland, that said company would not pay for said flasks unless a reduction was made, and that there was not a deficiency in said flasks to the amount of from $500.00 to $800.00.

The evidence being closed the plaintiff successively moved the court to give in charge to the jury the following several instructions marked numbers one, two, three, four, five, six, which were each severally refused and rejected by the court. To each of which several refusals by the court the plaintiff excepted.

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

The following are the instructions so asked for by the plaintiff, and refused by the court, to wit: ·

"No. 1. If the jury find that the $5,000.00 order was accepted by the plaintiff in satisfaction of the notes sued on, yet it was not an accord and satisfaction of said notes, and is not a bar to this action upon said notes.

"No. 2. If the jury find that the $5,000.00 order was accepted by the plaintiff in satisfaction of the note sued on, yet as the order is conditional upon the payment of two other orders, if the jury shall further find that the drawer, C. Kimberland, afterwards countermanded either of said orders which were to be first paid, and that the countermanded order was not paid, the $5,000.00 order is no bar to this action.

"No. 3. The $5,000.00 order referring to two other orders, and being conditional upon their payment, the three orders should be considered together, and if either order is found to be contingent upon a future sale of property by the drawer to the payer, then the $5,000.00 order, even if accepted by the plaintiff in satisfaction of the notes sued on, is not an accord and satisfaction of said notes, and is not a bar to this action upon said notes.

"No. 4. If you find the plaintiff is a corporation under the national banking laws, no accord and satisfaction can be binding upon the plaintiff, unless it was made by its board of directors, or unless it was previously authorized by them or subsequently ratified by them; and to constitute a ratification which would bind the plaintiff, it must have been deliberately made with a full knowledge of all the material facts, and such ratification will not bind the plaintiff for any acts of an agent which were not known to plaintiff at the time of such ratification.

"No. 5. The $5,000.00 order is on its face conditional upon the payment of the other orders mentioned therein, and whatever was realized thereunder was to be applied to the debts owing and to become due to the plaintiff from C. Kimberland, and no parol evidence can

be considered or received by the jury to vary or change the terms of the order.

"No. 6. If the jury find that the $5,000.00 order was not accepted by the payer, The Manufacturing Company, it cannot be an accord and satisfaction of the notes sued on, and is no bar to this action."

The court, whilst it refused to give the above instruction number two, changed said instruction and gave it as thus changed in the charge to the jury, to which the plaintiff objected, but its objection was overruled by the court, to which the plaintiff excepted. The said instructions as thus changed and given in charge by the court was as follows, to wit: "If the jury find that the $5,000.00 order was accepted by the plaintiff in satisfaction of the notes sued on, yet as the order is conditional upon the payment of two other orders, if the jury shall further find that the drawer, C. Kimberland, afterwards, and before the plaintiff had an opportunity of making it available using due care and diligence, countermanded either of said orders which were to be first paid, and that the countermanded order in consequence was not paid, the $5,000.00 order is no bar to this action."

The defendant moved the court to give severally in charge to the jury the following three instructions, to each of which the plaintiff objected, but its several objections thereto were each and all overruled by the court, and said instructions were given in charge by the court, to each of which rulings of the court the plaintiff excepted. The said charges so given by the court are as follows, to wit:

"No. 1. Anything of legal value, whether those in possession or in action—that is, any legal interest or right which the creditor had before agreed to be received and actually received in full satisfaction of the debt, is a good satisfaction, without regard to the comparative magnitude of the satisfaction with the original debt, and may be pleaded as accord and satisfaction.

"No. 2. If the jury believe from the evidence that the

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

order for $5,000.00 given in evidence in this case was drawn by the defendant, Campbell Kimberland, in favor of the plaintiff upon a fund in the hands of The Wellsburg Manufacturing Company, belonging or payable to the said defendant, and sufficient to leave a surplus after paying the orders in favor of John Prather, Adam Kuhn and S. George mentioned in said order for $5,000.00, and that the said order for $5,000.00 was delivered by the said defendant or some one in his behalf and by his authority, to the plaintiff in discharge and satisfaction of the notes here sued upon as well as of other debts due to said plaintiff, and was received by the plaintiff in discharge and satisfaction of said notes and other debts, that such delivery by the said defendant and receipt by the plaintiff would operate in law as a full discharge and satisfaction of said notes.

"No. 3. If the jury believe from the evidence that the order for $5,000.00 given in evidence in this cause was drawn by the defendant, Campbell Kimberland, in favor of the plaintiff upon a fund in the hands of The Wellsburg Manufacturing Company belonging or payable to the said defendant and sufficient to leave a surplus after paying the orders in favor of John Prather, Adam Kuhn and S. George mentioned in said order for $5,000.00, and that said order for $5,000.00 was delivered by said defendant, or some one on his behalf and by his authority, to the plaintiff as collateral security for the payment of the notes here sued upon, then it would be the duty of the plaintiff to use reasonable care and diligence to make the said security available for the purpose for which it had so been delivered and received, and if the plaintiff, by negligence or any wrongful act or omission on his part, thereafter rendered the said security, in whole or in part, unavailable for the purpose for which it had been so delivered and received, the loss, if any, thus caused should be borne by the plaintiff, and the defendants would be discharged to the extent of the injury they sustained from such negligence or misconduct of the plaintiff."

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

The question presented for the consideration of this Court by the writ of error is, whether there be any error in these rulings of the circuit court prejudicial to the plaintiff.

*J. H. Pendleton* for plaintiff in error.

*Daniel Lamb,* for defendants in error, cited the following authorities:

9 Pet. 442; 15 Ind. 4; 7 Wall. 570; 9 B. Mon. 282; 1 Chit. Pl. (6th ed.) 513; *Id.* (10th ed.) 478; 11 W. Va. 236; 12 Mod. Rep. 376; 1 Ld. Raym. 566; 8 Leigh 532; 1 Smith L. C. (7th ed.) 605; 9 Leigh 186; 20 Johns. 76; 3 Wend. 66; 14 Wend. 116; 21 Wend. 450; 53 Miss. 551; 2 Dana 90; 32 Me. 253; 2 Metc. (Mass.) 283; 1 Mu. & W. 153; 23 Vt. 563; 24 Conn. 620; 3 Barb. Chy. 621; 50 Miss. 251; 2 Sm. Lead. Cas. (4th ed.) Part II, 1562–1564, 1646 *et seq.*; Ex parte *Mure* 2 Cox Cas. in Eq. 63; 4 Ind. 425; 10 Ala. 515; 14 Ohio St. 7; 21 Am. Rep. 23; 108 Eng. C. L. R. 729; 17 Gratt. 216; 2 Am. L. C. (5th ed.) 402; 10 Bosw. 208; 3 Hurl. & Nor. 560; 23 Wend. 22; Story Agency §§ 91-97, 443; 10 Wall. 604; *Id.* 644-646, 650; 50 N. Y. 400; 9 Paige 501.

*G. W. Caldwell,* for defendants in error, relied on the following authorities:

6 Ga. 457; Code ch. 125 § 56; Wells Law and Fact p. 563 § 720; 22 Pa. St. 425; 26 Conn. 487; 49 Pa. St. 477; 42 Pa. St. 130; 20 N. H. 378; Wells Law and Fact 183-185, 187 § 224; 43 N. H. 471; 33 M. 93; 5 W. Va. 156; 4 Rand. 453; 6 Cranch. 27; 21 Gratt. 556; 1 Sm. Lead. Cas. (5th ed.) 445; Byles on Bills ch. 12; *Id.* ch. 13; 1 Sm. Lead. Cas. (7th ed.) 605; 24 Conn. 620; 23 Vt. 561; 14 Ohio St. 7; 21 Am. Rep. 23; 108 Eng. C. L. R. 729; 2 Am. Lead. Cas. 402; 23 Wend. 315; 2 Sm. Lead. Cas. (4th ed.) 232 *et seq.*; 3 Am. Rep. 690; 7 Cranch 299; Dunl. Pal. Agency 154; 2 S. L. C. 383.

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

GREEN, PRESIDENT, delivered the opinion of the Court :

In this case there was a demurrer to the declaration filed by the defendants at rules, upon which the court failed to act. But as the declaration is good, being in the usual form of a declaration on two protested negotiable notes, the failure in the court to act upon the demurrer is an omission, which prejudiced no one and of which this Court will not take notice, as the Appellate Court will consider the case as if the demurrer was overruled. (See *Bantz & Co.* v. *Basnett*, 12 W. Va. 772). There were also filed at the rules the pleas of *non-assumpsit* and payment. To these pleas no replications were filed, and no formal issue was joined; but a special plea was

Syllabus 1.

filed in court, and the plaintiff replied to this plea generally, and issue was joined upon it. The jury were sworn to try the issue joined. It is settled however, that, though the jury are sworn to try the issue, yet if several issues are joined and the verdict of the jury responds to them all, this Court will disregard such irregularity and consider that all the issues have been tried by the jury. See *Walden's ex'r* v. *Fuqua et al.*, 2 Wash. 1; *White* v. *Clay's ex'r*, 7 Leigh 68; *Baylor* v. *B. & O. R. R. Co.*, 9 W. Va. 291.

In the present case the verdict of the jury was responsive to all the issues, being a general verdict for the defendants. I say responsive to all the issues, for though no formal issues were taken on the pleas of *non-assumpsit*

Syllabus 2.

and payment, yet, as both these pleas properly conclude to the country, (see *Douglass* v. *The Central Land Company*, 12 W. Va. 512) the plaintiff had a right without the formal addition of a *similiter* to proceed to trial on them as though issues had been formally joined upon them. See Code of W. Va., ch. 125, § 25, p. 603, and *Douglass* v. *Central Land Co.*, 12 W. Va. 506; Judge Maxwell's opinion in *B. & O. R. R. Co.* v. *Faulkner*, 4 W. Va. 180, and *Brewer* v. *Tarpley*, 1 Wash. 363. But it is otherwise if the plea concludes with a verification.

The first objection urged by the counsel of the plaintiff in error is, that the court erred in allowing the defendants to file this special plea. The Code of W. Va. ch. 125, § 56, p. 607, provides: " When a plea is offered in any action which is not sufficient in law to constitute a defense therein, the plaintiff may object to the filing thereof on that ground, and the same shall be rejected. But if the court overrule the objection and allow the plea to be filed, the plaintiff may take issue thereon without losing the benefit of the objection, and may, on an appeal from a judgment rendered in the case in favor of the defendant, avail himself of the error committed in allowing such plea to be filed, without excepting to the decision of the court therein." This obviously permits an objection to be made by the plaintiff to the filing of the plea, whenever, if the plea were filed, a general demurrer to it should be sustained by the court. It is insisted, however, by the counsel of the defendants in error, that, in order that this statute may apply, the record must expressly show that the ground of the objection to the plea was, that there was not in it sufficient in law to constitute a defence to the action, and as the record in this case simply states that the plaintiff made objection to this plea without stating the ground of his objection, this statute had no application, and that having taken no bill of exceptions to the action of the court in permitting this plea to be filed, it cannot complain in this court of this action, having by its failure to take a bill of exceptions waived its objection.

If the record showed that the ground of objection was, not that the plea was insufficient in law, but some other ground, as that it ought not to have been permitted to be filed at the particular time it was offered, there would perhaps be soundness in the position taken by the counsel of defendants in error, that this statute would then have no application; but if as in this case the record does not disclose that the objection of the plaintiff's counsel was based on any ground other than the insufficiency in

1880
Special Term.

The First National Bank of Wellsburg
v.
Kimberlands

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

Syllabus 3.

law of the plea, this court must infer that this was the ground of objection, and this statute applies to the case just as much, as if this had been expressly alleged on the record to be the ground of the objection. In this case the record discloses no other grounds of objection on which the plaintiff based his objection to the filing of this plea. Even if we could regard this as a plea of accord and satisfaction as it was I presume intended for, there was no necessity for the defendants to file such a plea, as such defence would have been set up under their plea of *non assumpsit*. See *Paramour* v. *Johnson*, 12 Mod. Rep. 377; *Strong* v. *King*, 17 Mod. Rep. 538; *Martin* v. *Thornton*, 4 Esp. 180; *Lane* v. *Applegate*, 1 Stark. p. 997 (2 Eng. C. L. R. 312); President Green's opinion in *Bantz & Co.* v. *Basnett*, 12 W. Va. 353. It could also have been set up under the defendants' general plea of payment perhaps. See Chitty on Contracts (9 Eng. 11 Am. ed.) vol 2, p. 1110, where it is laid down that payment may be made in goods as well as in money ; and in *Ligon* v. *Dunn*, 6 Ired. (N. C.) L. 137, the court expressly held that under the general plea of payment the acceptance of a bill of exchange in discharge of a bond might be proven. Payment may be made in a bill of exchange. See *Mayer* v. *Nias*, 1 Bing. 311. Perhaps it might be necessary, before an accord and satisfaction could be proved under the plea of payment, to file with the plea a bill of particulars showing the character of the payment. See *Hoffman* v. *Walker*, 26 Gratt. 314, and opinion of Green, President, in *Bantz & Co.* v. *Basnett*, 12 W. Va. 854 and 855. But though the defendants, under their plea of *non assumpsit* could have relied on an accord and satisfaction of the plaintiff's cause of action, yet, as accord and satisfaction admits the original cause of action and sets forth matters in discharge thereof, they had a right to file such a plea, though the plea of *non assumpsit* had been filed. See *Merchants and Mechanics Bank of Wheeling* v. *Evans & Dorsey*, 9 W. Va. 373. Of course any special plea pro-

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v
Kimberlands.

posed to be filed must be such as would not be fatally defective on general demurrer.

It remains therefore to enquire, whether in this case the special plea would have been fatally defective on general demurrer; for if it would have been, the court ought under our statute to have refused to permit it to be filed, as it was objected to by the plaintiff. The first allegation in this plea is "that the maker of said notes executed and delivered to the said plaintiff, and the said plaintiff accepted, an order on The Wellsburg Manufacturing Company for $5,000.00, out of which the said notes were to be paid." This obviously was not an allegation, that an accord and satisfaction of said notes was agreed upon between the plaintiff and the defendants and actually made. On the contrary it amounts only to an allegation, that it was agreed between the plaintiff and the defendant that the defendant should give an order on The Wellsburg Manufacturing Company for $5,000.00 as a collateral security for the two notes due from the defendant, of $1,000 each named in the declaration, and, when the same was collected by the plaintiff, he should apply $2,000 thereof to the satisfaction of said two notes; and, there being no allegation that any monies had been received on this order, it is obvious that these facts stated constitute no defence to the plaintiff's action. It was properly held in *Drake* v. *Mitchell et al.*, 5 East 251, that a plea, that a note was *given for the payment and satisfaction of a debt*, was fatally defective in not averring that the plaintiff had *accepted the note as satisfaction*. In the allegation, we have quoted above, it is not only not alleged that the plaintiff had *accepted the order as satisfaction*, but the contrary is alleged, that *out of the order when collected by the plaintiff these two notes have to be paid.* And if this was really the agreement of the parties, it was obvious that the order was but a collateral security, and the transaction as stated could not be an accord and satisfaction, or any other defence to the action.

It is true this plea goes on immediately and makes an-

other statement utterly inconsistent with the statement of the agreement of the parties which had been thus set forth. It says: "Said order was accepted by The Wellsburg Manufacturing Company and then delivered to the said plaintiff and accepted by it in full satisfaction and discharge of the debt in the declaration mentioned." This statement is utterly irreconcilable with that which had just been made. The one statement in its legal effect was, that an order of $5,000.00 was given to the plaintiff simply as collateral security, out of which when collected it was to retain $2,000.00 in discharge of these notes. The other statement is, that this order of $5,000.00 was not given as collateral security, but was given in lieu of the debt due to the plaintiff and accepted by it in full satisfaction and discharge of the debt. By the first statement the order remained the property of the defendant pledged only, that out of it $2,000.00 should be paid the plaintiff. By the second statement the whole $5,000.00 order was the property of the plaintiff, in which the defendant had no interest, it having been given in lieu of the debt the defendant owed the plaintiff. The impossibility to determining what the agreement between the plaintiff and the defendant was, according to the allegations of this plea, would. of itself render this plea fatally defective as a defence to the action. The first allegation of this plea cannot possibly be rejected as surplusage, for it is the very portion of the plea which purports to set out the agreement of the parties, and their conduct relied on by the defendants as a full defence to the action; and if any part of the plea is to be rejected, it would have to be the latter portion, or that portion of it which is utterly irreconcilable with the defence which had been made. But even if it were possible to reject this first allegation as surplusage, the plea would still be fatally defective; for the second allegation is, that this order was received in full satisfaction and discharge of the *debt* in the declaration mentioned. What possible meaning can be attached to this language? The declaration had alleged

that the defendant, the drawer of .the notes, had promised the plaintiff in writing on June 14, 1870, to pay it one sum of money, the amount for which the first note was drawn, and on the 21st day of June, 1870, had promised the plaintiff in writing to pay it another sum of money, the amount for which the second note was drawn; and that the defendants on the 7th day of October had promised the plaintiff impliedly to pay it another sum of money, that is, the amount of the protest of this first note, and on the 24th day of October, 1870, they had promised impliedly to pay the plaintiff a fourth sum of money, to wit, the amount of the protest of the second note, and that all these promises had been violated to the damage of the plaintiff, and therefore it sued.

I suppose that the defendant must say, that the debt in the declaration mentioned, spoken of in this plea as fully satisfied and discharged, meant the whole amount claimed by the plaintiff as having been promised to be paid to it ; for otherwise the plea would not be a defence to the whole of the plaintiff's cause of action, as it purports to be. But if this be really the meaning of this plea, it is obviously fatally defective ; for the plea alleges that this accord and satisfaction was made on the 20th day of August, 1870, and the declaration shows that two of these promises to pay two of these sums of money were not made till long after this time, that is, till the 7th and 24th days of October, 1870, respectively, when these notes were protested. It is impossible by any accord and satisfaction to discharge debts which have no existence till long after the accord and satisfaction was agreed upon and completed. Such an allegation borders on an absurdity ; and yet to this absurdity the defendants would be driven, even if they could reject the first allegation in this plea as surplusage. I am therefore of opinion that the court ought to have rejected this special plea, because the allegations in it are not sufficient in law to constitute a defence to this action. We will consider hereafter what effect, if any, the improper admission of

*1880
Special Term.*

*The First National Bank of Wellsburg
v,
Kimberlands.*

1880
Special Term

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

this special plea against the plaintiff's objection thereto ought to have in this court on the judgment rendered by the circuit court in this case.

But as the defence of accord and satisfaction seems from the evidence to be the real defence relied upon, and as it might have been made, as we have seen, under the plea of *non assumpsit*, and as the issue on this plea as well as on the special plea must be regarded as having been submitted to and decided by the jury, we will consider the proceedings had during this trial and whether any errors were committed by the court during the trial, either in the refusal to exclude testimony from the jury or in the instructions given to the jury.

The only evidence which the court permitted to go to the jury, which the plaintiff by his counsel objected to, was the proof of the agreement made between the drawer of the notes sued upon and Kuhn, the president of The First National Bank of Wellsburg, the plaintiff. It had been proven, that the business of the bank was mostly done by the cashier and this president of the bank without consulting the board of directors, which seldom met. And the question, I suppose, intended to be raised by this objection to this testimony was, whether the president could make any accord and satisfaction of a debt due the bank by the acceptance of any order on a third party in full satisfaction and discharge of the debt of the bank, unless he was expressly authorized so to do by an order of the board of directors.

The inherent powers of the president of a bank are extremely limited. In *Hodges ex'r v. First National Bank of Richmond*, 22 Gratt. 58, Moncure, President, delivering the opinion of the court, says : " The president of a bank has, it seems, very little inherent power. He is generally, if not always, a member of the board of directors, and chosen by the board from their own number. It is his duty to preside at meetings of the board. ' Ordinarily,' we are told, ' the position is one of dignity and of indefinite general responsibility rather than of

any great or accurately known power. The president is generally expected to exercise a more constant, immediate and personal supervision over the daily affairs of the bank, than is required from any other director. Usage, or directorial votes, may confer upon him special functions, and may extend his authority to correspond with the increase of active duties. But the authority inherent in the office itself is very small; indeed it is very difficult to say precisely how or when it is much in excess of that which can be exercised by any other single director.' Morse on Banks and Banking, p. 128. ' A careful collation of all the adjudicated cases,' continues the same author, ' wears a striking and peculiar aspect which is not very favorable to the assumption of any species of executive authority without direct authorization.' *Id.* 129. He further says: 'That the entire collection of judicial authorities justifies the annunciation of only one act as falling within the proper inherent power of the president. This solitary function is, to take charge of the litigation of the bank. There is no question that this matter belongs to him by virtue of his office. He may institute and carry on legal proceedings to collect demands or claims of the bank. He may appear, answer and defend in suits against the bank. He may retain and employ counsel on behalf of the bank.' *Id.* 129. The powers and duties of a cashier in virtue of his office are, on the other hand, much more numerous, though his office is strictly executive."

The president of The First National Bank of Wellsburg, the plaintiff, clearly had no inherent authority by virtue of his office to make such an arrangement or accord and satisfaction, as the defendants undertook to prove in this case. The president of a bank or of any other corporation has, except to the very limited extent which we have above indicated, no inherent authority by virtue of his office to enter into contracts or agreements which will bind the corporation. But on the other hand it is clear, that he may be authorized so to do, and

1880
Special Term.

The First National Bank of Wellsburg
v
Kimberlands.

Syllabus 5.
Syllabus 6.

it is equally clear, that it is not necessary, in order to prove such authority, to produce a resolution of the board of directors conferring the authority, or to prove any action or consultation of the board on the subject, but such authority may be inferred by proving the existence of such facts as constitute clearly a public holding out, that such an agreement or contract as he has entered into was within the scope of his legitimate delegated authority and as warrant the public in so believing. See *Farmers Bank* v. *McKee*, 2 N. J. 318 ; *Mt. Sterling Turnpike Co.* v. *Looney*, 1 Metc. (Ky.) 550.

Syllabus 7.

It may be difficult in some cases to say, when the authority to make the contract or arrangement for the corporation by its president or other officer may be fairly inferred from the proof of the president or other officer being in the habit of doing acts beyond that which were inherent in him by virtue of his office. For the doing of some such acts habitually would not justify the inference, that he had authority to make contract or arrangement, if it differed essentially in its character from the acts not inherent in his office which he was in the habit of doing, unless the acts, he was in the habit of doing, were so numerous and variant as to justify clearly the inference, that a general authority had been impliedly conferred on him to do all acts and make all contracts, which the directors had authority to make and power to confer on the president to make. If the acts, he was in the habit of doing, were not thus numerous and variant, to justify the inference, that he had authority to do the particular act or make the particular contract for the corporation, the acts so done must be of the same general character, so as to involve the same general power, though it may be applied in the particular act or contract done or made to a different subject. See *Merchants Bank* v. *State Bank,* 10 Wall. 604.

Of course, if the act done by the president or other officer is such that by its charter the directors could not confer on him the power to do, or be such an act as the

1880
Special Term.

The First National Bank of Wellsburg
v.
Kimberlands.

directors themselves could not do, then no such authority could be imposed, no matter if it were shown that the officer habitually exercised such powers. This was the case in *Hedges, ex'r* v. *First National Bank of Richmond,* 22 Gratt. 69, Judge Moncure then saying: "The directors of a bank cannot release without consideration a debt due the bank; and *a fortiori* they cannot empower the president so to do."

In all such cases the question is not so much, whether the authority has been conferred by the directors on the officer, as whether the directors by their acquiescence in similar acts done by the officer, or in a large variety and number of acts, though not similar, justified the party dealing with the officer in believing that the directors had conferred on him such authority. In the language of the syllabus in *Merchants Bank* v. *State Bank,* 10 Wall. 604, "Evidence of powers habitually exercised by a cashier of a bank with its knowledge and acquiescence defines and establishes, as to the public, those powers." And this principle is equally true when applied to the president. But as the inherent power of the president is so much more limited than that of the cashier, the evidence of this character, from which the right to exercise unusual powers can be inferred, should be much stronger in the case of the president than in the case of the cashier of a bank. Not only may the authority of an officer of a corporation, as a bank, to do a particular act be inferred from proof of his habitually doing such acts with the acquiescence of the directors of the corporation, but where no such acts are proven, if any act or contract of such officer made without authority is subsequently ratified by the directors upon full knowledge of all the circumstances of the case, the corporation will be bound thereby as fully, as if the officer had been expressly authorized to do the act or make the contract. This ratification need not be shown by direct evidence that it was expressly approved by the board of directors, but such ratification may be inferred from their accept-

Syllabus 8.

Syllabus 9

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands

ing the benefits of the act or contract. As if under the contract so made by the president or other officer money is to be paid to the corporation, and it is received by the corporation and applied to their use even without the knowledge of the directors, if it is not returned, when it becomes known to the directors that it has been applied to their use, such conduct would be a ratification of the contract of such president or other officer.

In thus stating the law I but apply to a corporation fundamental principles governing all principals and agents; and of course these principles are as applicable to a corporation and its officers as to any other principal and agent.

Applying these principles to the case before us, it was proved that the board of directors of The First National Bank of Wellsburg seldom met, and that the business of the bank was mostly done by the cashier and president without consulting the board of directors. If this evidence fairly tended to prove that the president had authority to make with the defendant the contract or arrangement, which it was attempted to prove that he did make, then the defendants ought to have been allowed to prove such contract with the president; otherwise, they ought not, unless this contract was afterwards ratified. It is very difficult to determine whether this evidence of the president's contract, because of this proof, ought to have been admitted, or not, as tending to show that the president was authorized to make this contract. The proof as stated is so vague and indefinite, that it is difficult to say whether it fairly tended to prove the authority of the president to make such a contract or arrangement as the defendants allege he did. Before we can wisely determine such a question, we ought to be more definitely informed as to what acts and contracts the president was in the habit of making for the corporation. If they were acts of a similar character, or involving a like exercise of power, or if they were very frequent and were very various in their character, so as

1880
Special Term.

The First National Bank of
Wellsburg
v.
Kimberlands.

to justify or permit the jury to draw the inference that he was authorized to do any acts which the board of directors could do, then this evidence or this proof alone was properly admitted by the court. If, however, the evidence was given in the indefinite manner that it is certified in this bill of exceptions, then it would not have justified the court in permitting proof of the accord and satisfaction agreed upon and made with the president of the bank to go to the jury; for such indefinite and vague testimony is not such as the jury ought to be permitted to consider, as tending to prove that these very large powers claimed had been conferred on the president of a bank, whose inherent powers are so very limited. But of course if the proposed evidence was to be followed up by proof that the contract or arrangement of the president was subsequently ratified by the board, such evidence ought to be admitted to go to the jury.

In this case there was endorsed on the order, which the president of the bank undertook to accept, as the defendants say, in discharge of their notes, a credit made by the cashier of the bank of $1,193.03 paid on this order only four days after it was given, and this amount was credited on the books of the bank. It is true it was credited on a different debt, but as the bank thus appropriated to its own use this amount paid on this order, and if it was never returned by the order of the board of directors, they must be regarded as ratifying the taking of this order by the president, and they having so ratified it, the money so paid and received by the bank must be applied according to the actual understanding of the parties to this transaction at the time the order was given. If the jury believe the order was actually given in discharge of these notes, it must by this appropriation by the bank of this $1,193.03 be regarded by the jury as having been ratified by the board of directors, who must be inferred as having taken it with a knowledge of the true understanding of the parties, unless there was proof, which does not appear in the record, that this money so

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

appropriated by the bank was offered to be returned by order of the directors. For if it had been appropriated without such true understanding, it would have been the duty of the board of directors upon ascertaining that there was this misunderstanding to return this money. And if they never offered to return this money, they must be regarded as having ratified the acceptance of this order by the president and the contract made by him, when he accepted it, whatever that contract really was between the president and the defendant.

The fourth instruction asked by the plaintiff's counsel and refused by the court was, I presume, intended by the plaintiff's counsel to mean, that no accord and satisfaction made by and with the president would be binding on the bank, unless it was *expressly* authorized beforehand by the board of directors, or was subsequently *expressly* ratified by the board. If not so meant, it was so worded, that the jury on the facts which had been proven would have probably so interpreted this instruction. It was therefore properly refused by the court, as calculated to mislead the jury. It might have been properly given by the court, if it had been first so modified according to the views above expressed as to effectually prevent its misleading the jury.

We express no opinion as to what was the contract actually entered into between the president and one of the defendants, Kimberland, or whether the order was accepted by the president as an accord and satisfaction, or only as collateral security. If we assume that the president was authorized to make the contract he did make, or that it was subsequently ratified, and if we assume that the order on The Wellsburg Manufacturing Company was given and accepted as a full discharge and satisfaction of the defendant, Kimberland's, notes sued on, then it was a good accord and satisfaction, provided The Wellsburg Manufacturing Company did complete the purchase of the foundry then contemplated, and did by such purchase owe the amount, which by their con-

tract they stipulated to pay, and were not entitled to an abatement therefrom by reason of the fraud of the drawer of the order in misrepresenting the number of flasks sold, such right of abatement being prejudicial to the plaintiff. But if after this purchase the amount really due from The Wellsburg Manufacturing Company was reduced to the injury of the plaintiff as the holder of his order, because the company were entitled to an abatement from the nominal amount of their indebtedness, because C. Kimberland had made false statements in regard to the number of flasks sold, and they had been falsely inventoried and appraised upon the faith of his false representation, then the acceptance of this order by the president of the bank would not be a valid accord and satisfaction, it being vitiated by the fact that C. Kimberland knew that The Wellsburg Manufacturing Company would not owe as much as the president of the bank thought they would, and he did not communicate this knowledge to the president of the bank.

The indebtedness of The Wellsburg Manufacturing Company was, it is true, to the firm of Kimberland & Kuhn, but Kimberland was the active member of this firm, and we must infer that this indebtedness of The Wellsburg Manufacturing Company was properly applicable to these notes due from C. Kimberland to the plaintiff and to the other debts to which it was applied, for though they appear to be the individual debts of one of the partners, Kimberland, yet the partnership funds were to be applied to the payment of the individual liabilities of one of the partners by the express consent of the other partner, Kuhn.

The first instruction asked by the plaintiff's counsel, that this order could not be an accord and satisfaction, is, I presume, based on the idea, that as The Wellsburg Manufacturing Company did not at noon on August 20, 1870, when this order was given, owe this $5,000.00 therefore, though accepted as a full satisfaction and discharge of the notes sued on, still it could not so operate, as the

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

drawee did not have funds on which the drawer had then a right to draw. It is true, that if a firm gives to another a check in accord and satisfaction of a debt, and the drawee did not owe the drawer, or has no funds in his hands on which the drawer has a right to draw, such a check can not be a good accord and satisfaction generally, because the making of such a check is a false affirmation by the drawer, that he has funds in the hands of the drawee on which he has a right to draw. *Hoge* v. *Wilson*, 28 Gratt. 173.

But this rule, that the draft must be on a party in whose hands the drawer has funds, can have no application to the present case, as the drawer did not represent that The Wellsburg Manufacturing Company then owed any money on which he had a right to draw; but only that if they completed the purchase of the foundry, as was anticipated, they would owe. This is not stated on the face of the $5,000.00 order received by the president, but it is stated on the other order given to him personally and to Prather, and which constituted a part of the same transaction; and it was necessarily known to the president of the bank, as he was also the president of The Wellsburg Manufacturing Company. The court and jury have a right to look to the whole transaction and to consider not only all the papers executed at that time but also all the parol testimony of what was said at the time, in order to determine the true nature of this transaction, and to determine whether this order was accepted as a a full discharge of the notes sued on, or only as collateral security. We cannot be confined to the wording of the $5,000.00 order, nor to that and the other orders signed at the same time, to ascertain the character of the transaction. This $5,000.00 order on its face shows, that it was not intended to set forth and reduce to writing the whole contract and arrangement made between the parties. The contract and arrangement made August 20, 1870, between these parties was a verbal arrangement not intended to be and in fact not reduced to writing; and

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

the several orders, that were given by C. Kimberland given in pursuance of this verbal contract and arrangement, and did not constitute the contract or arrangement. Regarding this as the true relation and bearing of these orders, it results of course, that their existence and production does not prevent, but on the contrary necessitates, the enquiry by parol proof of the contract or arrangement, under which these several orders were given. That this is the true character of these orders is apparent on their face. On their face they would not constitute an intelligible contract. What property is to be purchased by the drawee is not specified. It is called "my foundry," when the drawee really owned no foundry, and when the parole evidence shows he meant the foundry and personal property of Kimberland & Kuhn. The order in favor of Kuhn and Prather is simply for a sum of money; but how it was to be applied does not appear on its face. This depended on the parol agreement of the parties; and the order itself shows therefore, that it did not constitute the agreement made by the parties. So the order in favor of the plaintiff says the $5,000.00 is to be on the drawer's debt. The drawer owed the bank no such debt; but some five different debts at least, the bank asserts six differerent debts, all due at different times and differently secured.

If we were to look at this order only, the inference might be that the drawee then owed the drawer a sum of money, what amount we could not say, but exceeding $5,000.00, and that the drawer owed the bank a single debt of $5,000.00 at least, but these inferences would be false. If the parties had intended to reduce their contract to writing, the facts would of course have been set out more fully; the property to be sold to the drawee would have been specified, the exact amounts to be paid to Prather, Kuhn and S. George, executors, would have been stated, and on what account or in satisfaction of what claims the $5,000.00 were to be paid would have been specified particularly, or if the order was given in

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

discharge of any claims, it would have been specified what they were particularly. It is therefore obvious that these orders were not intended to be a reduction to writing of the verbal contract or agreement which was then made, but were simply given in accordance with this verbal contract, and of course do not preclude the parol proof of this contract.

The $5,000.00 order was not conditioned upon the payment of the other orders named, but was only payable after them in order of time, precisely as they would have been had they been dated before it; and the failure to pay these prior orders in no manner affects the validity of the order for $5,000.00.

What was the effect of these orders? It is well settled that an order drawn on a particular fund, operates as an assignment of the fund not only as between the drawer and payee, but also as it regards the drawee, though not assented to or accepted by him, and will render him equitably answerable to the payee for a failure or refusal to appropriate the fund to the payment of the drafts. See 2 White & Tudor's L. C. (4th Am. from 4th London ed.) 22, 1646, and numerous authorities there cited; and also *Anderson et al.* v. *DeSeur*, 6 Gratt. 363. But the fund on which the order is drawn must have either an actual or potential existence; for if it has not, it cannot be assigned in any manner. See *Huling, Bockerhoff & Co.* v. *Cabell*, 9 W. Va. 522.

Though these orders do not clearly specify the funds out of which they were to be paid, yet as in all equitable assignments anything, which indicates an intention to assign, will suffice, and oral declarations may therefore be effectual for that purpose, parol evidence may be received to show such intention. In this case parol evidence shows clearly the particular fund, out of which these orders were to be paid. It is universally agreed, that an order directing the payment of the whole of a particular fund to a party is an equitable assignment of the fund, and though it be not accepted by the drawee,

yet the payee may in the name of the drawer bring his suit at law for the debt, and a court of law in such case will recognize his equitable right and not permit the dismissal of the suit by the drawer or its defeat by the drawee. But if the order is only for a particular amount to be paid out of its particular fund, and the amount of the order is not equal to the entire fund, no suit at law could be instituted by the payee against the drawee, if he has not accepted the order; nor could he institute a suit at law in the name of the drawer, because he has no claim, except to a part of the fund, and the debt due from the drawee can not be divided up into numerous debts due different payees of orders without his consent.

It is true, that some courts appear to have gone further and to have apparently held, that an order on a particular fund directing the payment of a specific sum less than the entire fund did not operate as an equitable assignment *pro tanto*, and if not accepted, was entirely inoperative. In many of the cases, however, in which broad language was used from which this inference might be drawn, it is probable that the doctrine was not intended to be carried so far, but the language of the court, when construed with reference to the character of the case before the court, ought to be considered as meaning probably no more than that an order to pay out of a particular fund an amount less than the whole fund would not be recognized by a court of law as an equitable assignment, though, if the order was for the whole fund, it would be recognized by a court of law as an equitable assignment. The following are authorities of this description, or authorities holding that an order on a particular fund for less than the whole amount of the fund was not an equitable assignment *pro tanto*. *Mandeville* v. *Welch*, 5 Wheat. 277; *Gibson* v. *Cooke*, 20 Pick. 15; *Tieman* v. *Jackson*, 5 Pet. 580, 597; *Walter* v. *Mann*, 18 Mo. 564; *Bliss* v. *Pierce*, 20 Vt. 25; *Eichelberger* v. *Murdock*, 10 Md. 373; *Wilson* v. *Curson*, 12 Md. 54; *Sands* v. *Mathews*, 27 Ala. 329, 402.

1880
Special Term.

The First Na-
tional Bink of
Wellsburg
v.
Kimberlands.

Syllabus 11.

But the better authorities hold, that when a person having a demand due him assigns part of it to different persons whether by separate orders in their favor or otherwise, they are valid equitable assignments *pro tanto*, and though, if the orders are not accepted, a court of law will in no manner recognize these partial assignments or orders as equitable assignments, yet a court of equity in a suit in chancery will recognize and enforce them. See *Field* v. *The Mayor of New York*, 2 Seldon 179 ; *Caldwell* v. *Hartupee*, 20 P. F. Smith 74 ; *Hall* v. *Buffalo*, 2 Abb. (N. Y.) App. Dec. 301; *The Public Schools* v. *Heath*, 2 McCart. (N. J.) 22 ; *Moody* v. *Kyle*, 34 Miss. 506 ; *Stanbury* v. *Smith*, 13 Ohio N. S. 495, 501 ; *Brooks* v. *Hatch*, 6 Leigh 534; *Yates* v. *Groves*, 1 Ves. 280.

In the case of *Mandeville* v. *Welch*, 5 Wheat. 277, Justice Story says : " In cases where the order is drawn on *the whole* of a particular fund, it amounts to an equitable assignment of that fund, and after notice to the drawee it binds the fund in his hands.   But when an order is drawn, either on a general or particular fund, for a *part only* it does not amount to an assignment of that part or give a lien as *against the drawee*, unless he consents to the appropriation by an acceptance of the draft, or an obligation may be fairly implied from the custom of trade or the course of business between the parties as a part of their contract.   The reason of this principle is plain— a creditor shall not be permitted to split up a single cause of action into many actions without the assent of the debtor, since it may subject him to many embarrassments and responsibilities not contemplated in his original contract.   He has a right to stand upon the singleness of his original contract and decline any legal or equitable assignments, by which it may be broken into fragments.   When he undertakes to pay an integral sum to his creditors, it is no part of his contract, that he should be obliged to pay in fractions to any other persons ; so that if the plaintiff should show a partial assignment to the extent of the bills, it would not avail him in support of the *present suit*."

· 1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

The conclusion reached was clearly right, as that suit was an *action at law*. We have reason however to believe that some of the language used will probably convey a false idea of what we suppose was Judge Story's real views. Thus in the portion of this opinion we have quoted he says: " But when an order is drawn on a particular fund for *a part only*, it does not amount to an assignment as against the drawee, unless he accepts the order." And again: " He (the debtor) has a right to stand upon the singleness of his original contract, and to decline any legal or equitable assignments, by which it may be broken into fragments." Judge Story, I presume, only meant that a court of law would not recognize an equitable assignment of a portion of a contract or an order on a particular fund for a part only of it. But the broad language he used has lead other courts to consider, that an order on a part only of a particular fund was not good even in a court of equity as an equitable assignment *pro tanto*.

The real views of Judge Story are, I conceive, better expressed in his work on equity jurisprudence, which is in apparent conflict with his views as above stated. With his views as expressed in his equity jurisprudence we concur. He there says: " If a draft or order is drawn on a debtor for a *part* or the whole of the funds of the drawer in his hands, such a draft does not entitle the holder to maintain a *suit at law* against the drawer, except the latter assent to accept or pay the draft." * * * " But the transaction will have a very different operation *in equity*. Thus, for instance, if A having a debt due to him from B should order it to be paid to C, the order would amount in equity to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. The same principle would apply to the case of an assignment of *a part* of such debt. In such case a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it." 2 Story Eq. Jur. §§ 1043-4.

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands

Syllabus 13.

Syllabus 14.

But, as we have before stated, the fund on which the order is drawn, must have either an actual or potential existence; for if it has not, it cannot be assigned in any manner.

It is however, in order that it may be equitably assigned, only necessary that a *chose* in action should have a potential existence. It is not necessary that it should be either certain in amount or be incapable of being defeated and avoided by a third party. Thus a laborer, who is hired only by the day and is liable to be discharged at any time, or, though he works by the piece and his wages vary every month and he is liable to be discharged at any time, so that he has a binding contract with his employer only to finish the piece on which he is working, can nevertheless assign his future wages, they having in the contemplation of law a potential existence, and not being regarded as a mere possibility or expectancy. See *Emory* v. *Lawrence and trustee*, 8 Cush. 151; *Hartley* v. *Tapley*, 2 Gray 565; *Lawrence* v. *Smith*, 7 Gray 150. And so too if a person was in the service of his employer till April 1st, and then without any intermission of his service makes another contract for further service at reduced rates, an order made prior to April 1st, while in service under his old contract, would operate as an equitable assignment of wages earned under the new contract made April 1st, after the order was given. See *Wallace* v. *Haywood Chair Company*, 16 Gray 209. And so too it has been held that if a party, who had contracts with a corporation for printing, made an assignment of a certain amount of what should become due him, this would be a good equitable assignment of what became due under contracts for printing done under contracts made after the date of the assignment. See *Field* v. *The Mayor of New York*, 2 Seldon 179.

If an assignment of future wages were made, when there was no contract of services, even though there had been prior to that such contract of service, the assignment would be inoperative, as it would be an assignment

of that which had no potential existence, the future 1880 Special Term. wages in such case being a mere possibility coupled with no interest. Morton, Judge, in *Lou* v. *Pen*, 108 Mass. 349; *Mulhall* v. *Quinn*, 1 Gray 105. Of this nature was the assignment in *Huling, Brockerhoff & Co.* v. *Cabell*, 9 W. Va. 522, which this Court held inoperative.

The First National Bank of Wellsburg v. Kimberlands.

In the case before us, as now presented to this court, the order was given on the fund which might arise from the sale of a foundry including personal and real property. Some four days before the order was given, it had been agreed by The Wellsburg Manufacturing Company and the owners of this foundry property, that they would purchase the same and that the purchaser would pay for the personal property at a price to be fixed by one Smith, but the price of the real estate was not agreed upon. The personal property had accordingly been so appraised at $5,100.00 three days before this order was given, but the price of the real estate was not agreed upon till two or three hours after the order was given. On these facts we must hold, that the fund, on which this order was drawn, had, when it was drawn, a potential existence, and the order operated as an equitable assignment of the fund *pro tanto*. If therefore this order was given by C. Kimberland in discharge and satisfaction of his notes sued upon, and if the plaintiff accepted it as such, though the drawer, The Wellsburg Manufacturing Company, never either accepted or paid this order, it will be a satisfaction, provided the contract made by C. Kimberland with the consent of his partner was not vitiated to the plaintiffs' prejudice by the fraud of C. Kimberland in misrepresenting the number of the flasks and thus procuring them to be appraised much higher than their value, as is alleged; for every thing of legal value, which the creditor did not have before, which is agreed to be received and is actually received in full satisfaction of a debt, is a good satisfaction without regard to the comparative magnitude or value of the satisfaction with the original debt, and may be pleaded or relied on as an ac-

Syllabus 15.

Syllabus 16.

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

Syllabus 17.

cord and satisfaction. See *Barn* v. *Carullo*, 4 Myl. & Cr. 702-703 ; *Boyd* v. *Hitchcock*, 20 John. 76 ; *Booth* v. *Smith*, 3 Wend 66 ; *Saul* v. *Rhodes*, 1 Mee. & W. 153 ; 1 Smith L. C. (7th ed.) 605 and authorities cited.

If this order was received as collateral security for the notes sued on, then the obligations of the plaintiff are correctly set forth in the third instruction offered by the defendant's counsel and given by the court. See *Exparte Mure*. 2 Cox's Cas. in Eq. 63 ; *Slevin* v. *Morrow*, 4 Ind. 125 ; *Russel* v. *Hoster*, 10 Ala. 515 ; *Faut* v. *Miller & Mayhew*, 17 Gratt. 216, 217.

We conclude therefore that the court properly refused to give the plaintiffs, instructions, numbers three, five and six ; that it also properly refused to give instructions number one and four, unless they were first qualified in the manner which would make them correspond with the law as hereinbefore stated ; and that instruction number two ought not to have been given even with the modification thereof made by the court ; but of this the plaintiff can of course not complain. The instructions asked by the defendant were all properly given by the court ; and the court might properly have added another, that if The Wellsburg Manufacturing Company could have avoided the contract for the sale of the foundry property, or had an abatement to the plaintiffs prejudice in the price to be paid therefor, by reason of the fraudulent misrepresentation by C. Kimberland of the number of flasks sold, then the order given by him to the plaintiff, though agreed to be received and actually received as an accord and satisfaction of the notes sued on, would not be held to be such accord and satisfaction.

Syllabus 22.

A plea of set-off was filed at rules and not written out, and no bill of particulars filed with it. and no issue taken upon it. This was certainly irregular ; but neither party could in this court after verdict and judgment complain of this irregularity, as under this plea in the absence of a bill of particulars no evidence could have been received, even if issue had been joined upon it.

It remains only to inquire whether the court's improperly admitting the defendants to file a special plea, to the filing of which the record shows that the plaintiff objected, is a sufficient ground for reversing a judgment for the defendants, when this special plea, if it had been drawn in proper form, would have only amounted to a plea of accord and satisfaction which could have been proven under the general issue of *non assumpsit*, which had been pleaded. It was decided by this court that the rejection of such a plea as accord and satisfaction, though not proper, would be no ground for reversing a judgment in this court, where the plea of *non assumpsit* had been filed, and the cause was decided on a demurrer to evidence. See *Merchants and Mechanics Bank of Wheeling* v. *Evans & Dorsey*, 9 W. Va. 373, syllabus 5. It is also true, that, if the special plea sets forth facts showing that the plaintiff never had cause of action, it ought to be rejected, if the plea of *non assumpsit* has been filed. See same case, syllabus 4. It will be seen that this case only decides, that, where the plea sets forth matters in discharge of the action, as accord and satisfaction, and the plea of *non assumpsit* is filed, and *all the evidence* is before the court as on a demurrer to evidence, this court will not reverse the judgment of the court below because it has improperly rejected the special plea, as this court sees all the evidence, and it was admissible under the plea of *non assumpsit*, and is sufficient to justify the judgment. Whether the same rule would be applied, where the evidence was not before this court, we need not decide. It is probably so; and this court in *Hale* v. *The West Virginia Oil and Oil Land Company*, 11 W. Va. 236, does say in broad language : "It is not error to reject a special plea setting up matter in defence to the action, when the plea of *non assumpsit* is filed, and the matter of defence of such plea may be given in evidence under the plea of *non assumpsit*." But it must be remarked, that in that case the special plea rejected set up a defence not like accord and satisfaction, matters in discharge of the action, but it

1880
Special Term.

The First National Bank of Wellsburg
v.
Kimberlands.

Syllabus 20.

set up facts showing that the plaintiff never had a cause of action; which might perhaps make a difference, for in such a case the special plea amounts only to the general issue, and its rejection could not injure the defendant, and in fact it ought in such a case to be rejected.

The court in that case says: "The special plea in effect only amounted to the general issue." But if we admit that the rejection of a special plea, though setting up matter in discharge of an action, ought not in any case to be a ground for the reversal of a judgment, when the plea of *non assumpsit* has been filed, and the matters of the special plea could be proven under the general issue, will it follow that the improper receipt by the court of a special plea of this character, when the filing of it has been objected to by the plaintiff, will be no ground for reversing the judgment of the circuit court, when the judgment is in favor of the defendant? And when the evidence has not been certified to this court, can this court say that the circuit court may not have received under this improper plea evidence, that could not have been properly received under the general issue? On the contrary when the evidence which the court received is not all certified to us, as in this case, can we assume that the court did not receive evidence to support this improper plea, which it would not have permitted if an issue on this improper plea had not been made up?

In the case before us it is, as we have seen, very difficult to determine what is the meaning of this special plea, and of course it must be difficult to surmise what sort of evidence the court below received to support it. What evidence it received would of course depend on the meaning which the court below attached to this special plea. In the case of *Hopkins Bro.* v. *Richardson,* 9 Gratt. 486, it was decided: "The admission of an improper plea is error; and the Appellate Court will not enquire, whether or not the plaintiff could be injured by its admission." Judge Lee in this case says: "Nor is it any answer to the objection, to say that the plea, even if

1880
Special Term.

The First Na-
tional Bank of
Wellsburg
v.
Kimberlands.

bad, could do the plaintiff no harm by being in the record. That is an enquiry upon which the court should scarcely enter, nor should it speculate upon the effect of an improper plea in prejudice of the plaintiff's rights. If it be insufficient and no answer to the action, it should be rejected, when objected to, nor should the plaintiff be put to an issue upon it." The views of Judge Lee were cited approvingly by Judge Haymond in delivering the opinion of this Court in *Griffie* v. *McCoy,* 8 W. Va. 206. In my judgment the refusal to reject a plea, which the court ought to reject, is a good ground for reversal, unless, when all the facts have been certified by the court below, it appears affirmatively to the court that the plaintiff could not be injured by having had to try his case on such improper plea.

The judgment of the circuit court in this case must therefore be reversed and annulled, and the plaintiff in error must recover of the defendant in error its costs in this court expended; and this Court proceeding to render such judgment as the circuit court ought to have rendered, doth set aside the verdict of the jury and award the plaintiff a new trial, the costs of the former trials to abide the final result of the suit; and this cause is remanded to the circuit court of Brooke county with instructions to proceed with it according to the principles laid down in this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED. CAUSE REMANDED.