### GUS KALB ET AL. V. AMERICAN NATIONAL BANK ET AL.

1. ACTIONS BY CORPORATIONS IN LIQUIDATION.

When the condition arrives which drives an incorporated company into liquidation, when it must marshal and collect its assets, and pay its debts, and wind up its business and adjust its affairs, its power to assert and defend its rights, is most strong, because the necessity is then most imperative. The last sign of vitality of an incorporated company is the power to maintain and defend an action; and the nature and purpose of the action is the test of whether or not the company has sufficient life to maintain it.

2. DUTY OF PRESIDENT TO SUE—WITHOUT SPECIFIC AUTHORITY.

When an incorporated company goes into liquidation, it becomes the special function of its president, for the purpose of winding up its affairs, to see that actions to that end are maintained and defended; and he may do this without specific authority of the board of directors.

3. MAY SUE TO RECOVER FUNDS LOST BY OFFICERS.

A corporation, by having gone into liquidation, having wound up its affairs and disposed of its stock and assets, is not thereby deprived of the right to sue to recover funds which it is claimed were negligently lost by its officers or servants.

4. ACTION RATIFIED BY CONDUCT.

An action being litigated and pursued by a corporation from one court to another, in itself refutes a claim that it was not the purpose of the board of directors to institute and maintain it, and amounts to an adoption of the act of that board in that regard, and ratifies it by conduct.

5. BANKING CORPORATION—RESOLUTION AS TO LOSS OF FUNDS.

A resolution passed by the board of directors of a banking corporation exonerating an officer of the bank from any liability for the loss of money which was stolen or which disappeared from the bank, does not amount to a relinquishment of the claim or estop the corporation from subsequently bringing suit to recover the money on the ground that it was lost through the negligence of the officials.

6. RULE AS TO DEGREE OF CARE AND LIABILITY FOR LOSS.

An officer of an incorporated company, entitled, as against everybody, to the care and control of its assets, and who accepts that service and employment, while he may not be an insurer, yet, when his duties are fixed and determined for him, in the accomplishment of that service, and the manner prescribed, and the place fixed, and the wherewithal provided by which he may safely perform that engagement, is held to the exercise of such care to effect it as an ordinarily prudent man, under the same or similar circumstances, would exercise; and if he fails in this, and loss directly results, he must make good such loss.

7. CAUSE OF ACTION AGAINST OFFICERS OF A BANK.

A petition in an action by a banking corporation against its officers, the vice-president and cashier, setting forth the character of the plaintiff and its business, that it made ample provisions for the safe keeping of its funds, by vault and safe and locks and time locks, of approved strength and pattern, the official character and employment of defendants, and the acceptance of the duties and responsibilities by each of his respective office, that it was their duty, and the duty of each of them, to have charge of, and to keep the money of the bank, and to see to it that at proper times it was kept in the safe and vault and behind the locks and bolts and bars provided for its reception, and averring that they failed in this, that they did not use the equipment provided for the safety of the money and by the use of which it would have been preserved, and that by reason of this neglect to do so, the money disappeared and has never been returned or its loss made good, states a cause of action against such officers.

8. MEANING OF REASONABLE CARE—CHARGE TO JURY.

Reasonable care, upon the part of officers having the care of the funds of a bank, in the the matter of attending to the vault doors, is to lock them, and to see that they were locked. And to instruct the jury, in such case, that if the officers " acted in good faith about the affairs of the bank, and used reasonable diligence and care in and about the closing and locking of the door " that they would be relieved from liability, would have been improper.

9. VERDICT NOT AGAINST EVIDENCE.

Where the evidence shows that money disappeared from the vaults of a bank on a certain date, and it appears that the combinations and time locks were not broken or disturbed, and it is also shown that if said locks and combinations had been set, as it was the duty of the officers to set them, it would have been a physical impossibility to have secured the money without destroying or breaking the lock, as against the mere assertion of the officers that the doors were closed and the locks adjusted, a verdict based upon the conclusion that the officers negligently failed to perform that duty, can not be said to be against the weight of the evidence.

HEARD ON ERROR.

*Cable & Parmenter*, for plaintiffs in error.

*Richie, Leland & Robey*, and *Ridenhour & Halfhill*, for defendants in error.

NORRIS, J.

On December 24, 1898, the American National Bank of Lima was conducting a banking business under the national banking laws of the United States, in the city of Lima. The bank commenced its action in the court of common pleas of Allen county, against Gus. Kalb and N. L. Micheals, the plaintiffs in error here, and predicated its claim for recovery upon substantially these allegations of fact:

Its business was conducted in a building fitted out with vault and safe and strong box, in which to securely keep its valuables and money. To the vault was an outer and inner steel door. The outer vault door was equipped with a combination lock with time attachment; the inner door of the vault was furnished with two combination locks. The safe inside the vault was provided upon its outer door with a combination lock with time attachment; within the safe was a steel compartment or strong box, upon the door of which was also a combination lock. These combination locks, when properly applied to the function of keeping the doors closed and bolted, will only yield access to the various places which they thus guard, to one who knows the combinations and properly employs them. The time apparatus, when set and in motion has such control of the locks to which they are attached as to prevent the effec-

tual use of the combination while the timers are in motion, and makes it, during that period, impossible for one to gain access to the places they thus guard, however carefully and correctly they may manipulate the combinations. All these appliances provided for the safe keeping of the assets of this bank, were of standard make and quality and pattern.

Prior to December 24, 1898, Kalb was the cashier of said bank, and Michaels was the vice-president of said banking corporation, each upon salary, and with the duties of each fixed under said employment. Kalb, as cashier, and Michaels, as vice-president, had together the care and custody of the money of the bank; Michaels in this regard being the assistant of Kalb, and as such they had charge and control of the safe and vault, and of the apparatus for the safe keeping of the money. It was the duty of both, and the duty of each of them, to see that the bank's money was put in the place of security thus provided, and that all the guards afforded by the appliances for its safety should, at the proper time, be used and set in motion.

On December 24, 1898, $18,252.72 of the money of the bank was thus in the custody of defendants, which to safely keep was thus the duty of defendants, and this sum so in their custody on December 24 at the close of that day's business, they did not have in said safe or vault or bank on December 27, the next business day after the twenty-fourth, and ever since fave failed to produce and to restore to plaintiff said sum or any part thereof; and that the absence of this money from the vault and from the bank, and its loss, was occasioned by, and was the result of, the failure of Kalb and Michaels to place the same in the vault and to use the appliances provided by plaintiff for keeping it safely there, and that by reason of all this, plaintiff's cause of action arises against them, and it asks for judgment.

Kalb answers and objects to the jurisdiction of the court, because the stockholders of plaintiff, by resolution, declared the necessity of placing the bank in liquidation, and of winding up its affairs, and pursuant to this, its affairs were wound up and its business ended, all before the commencement of this action. And that this suit was instituted by the president of said bank and without any authority from the stockholders or board of directors, and that hence plaintiff has no capacity to sue, and the court is without jurisdiction.

Kalb says that before the filing of the petition, after the bank went into liquidation and ceased to carry on business, he, by purchase, became the owner of all its capital stock.

That he bought the stock at par and with all the assets of the bank, and assumed and has paid all the liabilities of the concern, and that no stockholder or officer of said institution had authority to bring or maintain the action. He admits that he was the cashier of the bank, and that money, the funds of said bank to the amount claimed in the petition, was taken therefrom. But he says it was done without his knowledge, fault or negligence.

The reply to Kalb's answer admits the action of the bank as to liquidation, and denies all else in the answer.

Michaels answers to the jurisdiction of the court and capaᎧ.ty of plaintiff to sue and maintain the suit, in substance as is pleaded by Kalb, and he pleads the liquidation of the concern, and the purchase of its

assets and stock by Kalb. He admits that he was the vice-president with duties as recited in the petition, and that the money of the bank, to the amount claimed, was under the care of himself and the cashier in the vault of the bank, and says that between December 24 and 27, 1898, said money was stolen from said vault, without his knowledge or neglect, by some person unknown to him; and because of this, the defendants have never produced or replaced the same; and he denies all else in the petition. The reply to this is a denial.

The issues thus tendered came on for trial to a jury in the common pleas, and when the plaintiff had introduced its evidence and rested its case, each defendant, for himself, filed his separate motion that the court arrest the evidence from the jury and direct a verdict in his favor. Each of these motions the court overruled. Thereupon the defendants introduced their evidence, and the case was submitted to the jury. The jury returned its verdict for the plaintiff against both defendants. Each defendant filed his motion for new trial. Before the court disposed of either these motions, Kalb asked leave of the court to so amend his separate amended answer, as to make it conform to the facts, as he claimed the evidence showed the facts to be. This amendment the court did not permit. Thereupon both motions for new trial were overruled, and the court entered its judgment on the verdict. A portion of the amount of the verdict has been remitted by the plaintiff.

Each defendant in his own behalf prosecutes error by separate petitions. Kalb in his petition, assigns as matter prejudicial to his cause:

That the court erred in overruling his motion for new trial.

Error in rendering judgment on the verdict.

Error in refusing him leave to amend his amended answer so as to conform to the facts produced in evidence.

Error in refusing to arrest the evidence and direct the jury to return a verdict in his favor.

Because the petition does not state facts to constitute a cause of action against him.

His motion for new trial also saves for review, the objection that the verdict is not sustained by the evidence and is contrary to the law of the case.

Error in the admission of evidence and the rejection of evidence.

Error in the charge as given, and in refusing to charge the jury as requested by him.

Michaels, by his petition in error, claims that the trial court erred as to his cause, and prejudiced his rights by:

Refusing to admit evidence offered in his behalf, and in receiving evidence offered by the plaintiff over his objection.

Error in overruling his motion to arrest the evidence and to direct a verdict in his favor.

Error in the charge as given and in refusing to charge as he requested.

That the vedrict is not supported by the weight of the evidence.

That the facts set forth in the petition do not constitute a cause of action against him.

That the plaintiff is without authority to bring and maintain the action.

Error in overruling his motion for a new trial.

And that the verdict is irregular in form, and for a greater amount han claimed.

Kalb v. National Bank.

This last assignment of error, which is also claimed by Kalb as a reason for setting aside the verdict, may be disposed of by referring to the *remittitur* which was filed before judgment, and which was recognized by the court in determining the amount of the judgment.

We are not of the opinion that the criticism of the petition, that its averments do not support an action against defendants or either of the defendants, is borne out by an inspection of that pleading. It sets forth the character of plaintiff, and its business. That it made ample provisions for the safe keeping of its funds, by vault and safe and locks and time locks of approved strength and pattern. The official character and employment of defendants, and the acceptance of the duties and responsibilities by each of his respective office. That it was their duty, and the duty of each of them, to have charge of, and to keep the money of the bank, and to see to it that at proper times it was kept in the safe and vault and behind the locks and bolts and bars provided for its reception, and that it be unendangered and secure as near as it might be, from the hand of any person who had no right to its custody or possession. The petition says they failed in this; that the failure is attributable directly to their negligence ; that they did not use the equipment provided for its safety, and by the use of which, the money would have been preserved. And that by reason of their neglect so to do, the money disappeared, and never has been returned or the loss made good, in whole or in part.

There can be no doubt that the officer of an incorporated company, entitled, as against everybody, to the care and control of its assets, and who accepts that service and employment, while he may not be an insurer, yet, when his duties are set and determined for him, in the accomplishment of that service, and the manner prescribed, and the place fixed, and the wherewithal provided by which he may safely perform that engagement, he is held to the exercise of such care to effect it as an ordinarily prudent man under the same or similar circumstances would exercise. And if he fails in this, and loss directly results from such failure, he must make good the injury which his negligence has thus occasioned.

We think the petition clearly states a case based upon this hypothesis ; and hence that defendants' objection to it is not well taken.

It is urged that the action cannot be maintained by the plaintiff, and that plaintiff has no capacity to sue. That by resolution of the stockholders and by action of its board of directors, the plaintiff went into liquidation, wound up its affairs, and having thus accomplished the purpose of its corporate existence, it ceased to act in its corporate capacity, and this before the commencement of this action.

It is further urged that the determination to sue was by the vote of four of the nine directors of the bank, and that hence, even if the corporation at that time retained sufficient of its expiring vitality to approve, by its last breath, of the proceedings, it is not the act of the company, but of only an unauthorized minority of its board, and clothed none of its officers with power to institute and carry on the litigation.

We are not prepared to concur with this view of counsel.

Record minutes of the board of directors, of the action taken by the board in that behalf, and the record of the action of the board relating to the authority of Theodore Mayo, the president, to act in and about the bringing and maintaining of this suit, was offered in evidence, to sustain this proposition and defense, and was by the court rejected.

That the bank had, by resolution, gone into voluntary liquidation, is admitted in plaintiff's reply to Kalb's answer, and of this admission both defendants have the advantage.

In the fitness of things it must be that the last sign of vitality of an incorporated company is the power to maintain and defend an action. The nature and purpose of the action itself is the test of whether or not the company has sufficient life to maintain it.

When the condition arises which drives an incorporated company into liquidation; when it must marshal and collect its assets, and pay its debts and adjust its affairs, and wind up its business; its power to assert its rights and to defend its rights, which is its distinguishing substance, as a legal entity, is most strong because necessity is then most imperative. The law does not an idle thing. It would be idle to create a corporation and suffer it to incur liabilities and acquire assets, and when the time came to adjust all, and end all, shut to it the only avenue through which the end can be attained. Under such conditions it appears to be an especial function of the president of a corporation, for the purpose of winding up its affairs, to see that actions to that end are maintained and defended. In support of this, for which I am indebted to brief of counsel, see Morse on Banks and Banking, 143; Cook on Stocks and Stockholders, 1078; 24 L. R. A., 719; 16 W. Va., 555; 39 S. W. R., 914.

That the resolution to bring suit was legally passed, even if it were necessary to confer authority to that end, is assured by sec. 26 of the by-laws of the company, which was offered in evidence, and not received by the court, and which provides, in substance, that " a majority of all directors is required to constitute a quorom to do business, and when a quorum is present a majority of a quorum shall be necessary to carry motions and resolutions." This directory consisted of nine members, and seven of them voted upon the resolution to proceed to the collection of the liability here in suit; four voted yea and three voted nay. It appears that eight members of the board were present when the resolution was voted upon; one declining to act with the board upon that occasion, refusing to vote on the resolution, leaving the seven members to transact the business of the board in that regard, and to act as the quorum. The seven did so act, and the resolution was passed by a majority of the quorum present and acting as a board, and voting upon that occasion.

So, if this proposition of defendants were well grounded, the minutes of the board offered in evidence would not tend to sustain it. They were offered and rejected, in which we see no error, As was well said, in substance, by the trial court: " The action itself here being litigated, and pursued by the plaintiff from one court to another, refutes the proposition that it was not the purpose of the board to institute and to maintain it, but is an adoption of the act of the board in that regard, and ratifies it by conduct."

It is claimed by the defendant Kalb, that the refusal of the court to permit him to so amend his separate amended answer, as to conform to the facts produced in evidence, was error prejudicial of his cause.

The matter sought to be interposed by this amendment was, in substance, that at a meeting of the board of directors, held before the commencement of the action, a resolution was passed exonerating defendant from any liability for the loss of said money. And that this resolu-

Kalb v. National Bank.

tion of itself estopped plaintiff's action and recovery. And further, that he bought the stock and assets upon the condition that no suit was to be brought against him, because of the loss of said money. And that all stock retained by shareholders was so by them held only for the purpose of participating in whatsoever of said money might be thereafter recovered, should the same ever be found. That rel) ing on said resolution, and upon said agreement, he bought said assets and stock. That without this he would not have so done, and that hence the claim cannot be asserted against him.

We do not regard the proposition insisted on by the amendment, that the shareholders did by that resolution in fact release and acquit defendant from liability, conformable with the evidence in the case. The resolution appears to have been a declaration of confidence in the integrity of the officers of the bank. It was to the effect, say the witnesses, for it was not spread upon the minutes of the company that, "they did not attach any blame to the officers of the bank." That is to say, they did not accuse and deem any of them guilty. But that resolution falls far short of an actual relinquishment and cession, and giving away the assets of the bank, if his claim be an asset of the concern. The resolution, instead of a final renunciation, was but the mere expression of opinion.

The other matter in the proposed amendment, that as a part of the consideration of the sale, they agreed not to bring suit for the collection of this claim, is refuted by every witness whose testimony tends to throw light upon the agreement. They all concede that it was expressly understood by those who retained their certificates of shares, and the answer itself so pleads, that they were thus held and kept by them for the purpose of participating in whatever might be realized from this claim, realized from the source where the liability existed, if any fund arose from it. So that we are not of opinion that there is error in withholding permission to file the amendment.

Coming now to the propositions of law which were requested to be given as a part of the charge, and first that of Kalb, which was requested to be given as a charge before the argument of the case to the jury. It is this:

"If you find from the testimony that Gus. Kalb acted in good faith and with ordinary care and prudence in and about the affairs of said The American National Bank, and used reasonable diligence and care in and about the closing and locking of the outer vault door on the night of December 24, 1898, then I charge you, that even though for some cause not accounted for by the evidence in this case the money was lost from said bank, that the said Gus. Kalb is not responsible for said loss, and your verdict should be in favor of Gus. Kalb, no cause of action."

"If you find that Kalb acted in good faith and with ordinary care and prudence, in and about the affairs of said American National Bank." We think that the proposition, coupled with that which I have just read, had no place in the controversy, and was properly refused.

Reasonable care when he attempted to lock the vault door, was to lock it. Reasonable care was to see that it was locked, and to be sure that it was locked; that was the reasonable diligence he was called upon to use in and about the locking of the door. And that he acted in good faith in and about the affairs of the American National Bank, would not

even up negligence which directly caused the loss of this money if he was guilty of such negligence. And the same may be said of the proposition of defendant Michaels which is of the same tenor and effect.

As to the other propositions which the court refused to give in form requested, without taking time to dwell upon them, such of them and parts of them as is the law of the case, and responsive to the facts, are in substance given in the general charge.

The charge itself is an excellent one, fully covering the issues and meeting each phase of the controversy.

We have examined the record thoroughly and considered carefully each of defendants' exceptions to the admission and rejection of evidence, of some of which we have already made disposition.

The objection to the introduction of evidence based on the attack upon the sufficiency of the petition, are disposed of in our opinion of the merits of that pleading. And so of certain record evidence, the exceptions saved to the introduction and rejection of evidence are so numerous as to preclude notice of each as it occurs in the record.

Objection is made to the introduction of a part of page five, and all of page six, of the pamphlet marked "Exhibit A," which appears to be a prospectus of the bank and its business. While we cannot see how it assists the plaintiff in fixing the liability of defendants, yet neither do we see how its admission was prejudicial. It is an advertisement which assists nobody and harms no one.

We find no error in the hypothetical questions permitted. They assumed the condition detailed by defendant to have existed, when they left the bank on the night of December 24. They were propounded to, and answered, such of them as were permitted to be answered, by experts who were qualified to speak, and were addressed to matters vital to the issue.

Certain records of the minutes of said company were offered by defendants in support of the assertion that defendant Kalb is the owner of the claim upon which this action is founded, having purchased the same as an asset of the bank. The record was excluded as not tending to sustain this declaration. The evidence offered enumerates and names each asset of the bank sold to and purchased by him. The claim here in suit on account of which, it woud appear from other evidence offered by the defendants, that certain shareholders had retained their certificates of stock that they might participate in it when recovered, is not one of the assets named as passing by that sale. We think the evidence properly rejected.

Defendants offered to show that certain witnesses were stockholders in said bank, and the extent of their holdings; this to affect their credibility, which evidence was rejected by the court. We think no prejudice arises here, because it many times appears in the record that these same witnesses are owners of stock which they retain, and that they will participate in the amount of recovery and are interested in the event of the suit.

And altogether we find no error in the admission or rejection of evidence. Neither do we find error in refusing the motion to direct a verdict.

Now, is the verdict supported by the weight of the evidence? It is not contended but that on the night of December 24, 1898, the money here involved was in the vault of plaintiff bank, $15,000 in the strong box, and $3,000, about, in a box on top of the safe in the vault. It is

Kalb v. National Bank.

not disputed that the defendants were respectively the cashier and vice-president of the bank, the latter, as he admits, the assistant of the cashier.

It is established beyond denial that, as such officers, they were the custodians of the funds of that institution by virtue of their positions, the duties of which they had undertaken to perform. And if it had never been so before, they were such custodians upon that particular occasion, when they assumed charge and had control of that place of business and its contents. The primary object for which they were there, was to receive deposits from the customers of the concern, and they did transact that business. And having, as they supposed, performed their duties, they departed. The $15,000 had been placed in the strong box, in the afternoon. The $3,000 of deposits was placed by defendants on top of the safe which enclosed the strong box. Upon the strong box was a combination lock, upon the door of the safe in which was the strong box, was a combination lock with a time attachment. Upon the inner door of the vault were two combination locks. Upon the massive outer door of the vault was a combination with a time attachment. These they swear were all closed and locked when they left the bank. The safe and strong box had been locked at the close of regular business hours; this was not disturbed by them, and because it was locked, they put the deposits on top of the safe. The inner vault door Michaels closed and locked, and distributed the combination. The outer door to the vault Kalb closed and locked, distributed the combination, adjusted the timer to it, set for thirty-six hours and in motion. So all the devices and apparatus which plaintiff had provided for the safety of its funds were bent in that direction and brought into requisition by these defendants before they left the bank, they so swear.

Two days intervened before the next business day, Sunday and Monday, which was Christmas day. On Sunday no less than four witnesses, both defendants, Mr. Goldsmith, the president of the bank, and the janitor, were in the bank, and the vault door was shut; this as late as four o'clock on that Sunday afternoon. On Monday, morning about seven o'clock, the janitor discovered that the outer door of the vault was open, and further investigation disclosed the fact that the inner door of the vault and the doors of the safe and strong box were unlocked, and the money, all of it, had disappeared. The outer door of the vault, though open, was locked, the time lock was running and had about four hours yet to run at the time the janitor appeared upon the scene.

Now experts, learned, and skilled, and many men who make and sell, and men who for years have employed like devices in like institutions, for like purposes, men whose interests and vocation and business, require that they investigate and understand combination locks and time locks, and the protection they afford, and the safety they insure, all testify that had the precaution been taken, and the care exercised which defendants swear they did apply upon that occasion, without force no human hand could have reached that money for thirty-six hours after the timer on the outer door of the vault was started. There was no evidence of force or violence.

And so the evidence presents a physical impossibility upon the one side, and the assertion of a fact upon the other. They can not harmonize; they can not exist together, and that they did not, the open door and the absence of the money bears witness.

The jury concluded that the defendants were mistaken in their assertion of fact, and so found by the verdict, and we are not prepared to say, that the verdict is manifestly against the weight of the evidence.

No error appearing· upon the face of the record to the prejudice of plaintiffs in error, the judgment is affirmed at their costs, and the case is remanded for execution.